Russell S. ROSEN; Michael N. Ungar; Common Cause/Ohio, Plaintiffs–Appellees,

v.

Sherrod BROWN, Secretary of State, Defendant–Appellant,

Cuyahoga County Board of Elections, Defendant.

No. 90–4100.

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1992.

Decided July 22, 1992.

Gordon Beggs, Cleveland, Ohio (argued and briefed), for plaintiffs-appellees.

Catherine M. Cola, Asst. Atty. Gen., Patrick A. Devine (argued and briefed), Office of Atty. Gen., Columbus, Ohio, for defendant-appellant and defendant.

Before: MILBURN and SILER, Circuit Judges; and PECK, Senior Circuit Judge.

MILBURN, Circuit Judge.

Robert Taft[1] appeals the district court's grant of summary judgment for plaintiffs in this action seeking to enjoin enforcement of an Ohio election statute, Ohio Revised Code § 3505.03, which prohibits nonparty candidates for elective office from having the designation Independent or Independent candidate placed on the ballot next to their name. On appeal, the sole issue is whether Ohio's refusal, pursuant to Ohio Rev.Code § 3505.03, to place the designation Independent below the name of a candidate whose name appears on the general election ballot as a result of a nominating petition violates the First and Fourteenth Amendments of the United States Constitution. For the reasons that follow, we affirm.

## I.

### A.

The following facts were stipulated by the parties in the district court: Plaintiff Russell Rosen was a candidate for election to the Ohio House of Representatives for the 15th District in the November 8, 1988, general election. Rosen was not affiliated with any political party and secured a place on the general election ballot by filing a statement of candidacy accompanied by nominating petitions containing a sufficient number of valid signatures as required by Ohio Revised Code § 3513.257. After securing a place on the ballot, Rosen requested that the designation Independent or Independent candidate appear below his name on the ballot. On August 4, 1988, Rosen was informed by the Ohio Secretary

of State's office that such a designation was not permitted under Ohio Revised Code § 3505.03.

Plaintiff Michael Ungar is an active registered voter in the 15th House District of Ohio. Plaintiff Common Cause/Ohio has members residing in the 15th House District of Ohio. Common Cause/Ohio is a nonprofit, nonpartisan organization; it is a chapter of Common Cause, a national organization committed to improving the democratic operation of the state and federal governments.

Defendant Sherrod Brown was the Ohio Secretary of State. Pursuant to Ohio Rev. Code § 3501.01, the Secretary of State is the chief elections officer of the state. As such, his duties include: advising the boards of elections as to the proper methods of conducting elections, preparing election rules and instructions, determining the form of ballots and election related materials, and compelling compliance with election law requirements by election officials.

Defendant Cuyahoga County Board of Elections is the board of elections for Cuyahoga County, Ohio, pursuant to Ohio Rev. Code § 3501.11. The board's duties include: organizing polling places, reviewing petitions and nomination papers, and maintaining ballots and other election related material for the county. Pursuant to Ohio Rev.Code § 3505.01, the Board certifies the form of the official ballots to be used at the general elections for the 15th Ohio House District.

### B.

On August 8, 1988, plaintiffs commenced this action pursuant to 42 U.S.C. § 1983. They sought injunctive relief against the enforcement of Ohio Rev.Code § 3505.03 and declaratory relief that the statute was unconstitutional.

On August 31, 1988, pursuant to a preliminary injunction issued by the district court, the Cuyahoga Board of Elections

---

**1.** Subsequent to the filing of this action Robert Taft succeeded Sherrod Brown as the Ohio Secretary of State.

certified the designation Independent by Petition to appear beneath Rosen's name on the November 1988 general election ballot. Rosen lost the election. However, plaintiffs sought a permanent injunction against enforcement of Ohio Rev.Code § 3505.03 on the ground that Rosen planned to run in future elections.

In support of their motion for summary judgment, plaintiffs presented the affidavits of three experts. The first expert, Jack L. Noragon, has a Ph.D. in Political Science from Ohio State University. He is a Senior Research Consultant in Columbus, Ohio. Noragon is also an adjunct professor in the Department of History, Political Science, and Criminal Justice at Ohio Dominican College; he has held previous teaching assignments at other colleges and universities in Ohio. Noragon also served as a Senior Research Associate with the Ohio Legislative Service Commission and on the Ohio Secretary of State's Ad Hoc Committee on Election Reform.

In his affidavit, Noragon stated that Ohio Rev.Code § 3505.03 is one of various provisions in state law that have historically disadvantaged Independent candidates. Noragon stated that some political scientists have concluded that such statutes are the result of the near monopoly that Republicans and Democrats have in controlling ballot access via the legislative process.

Noragon further stated that the available evidence indicates that it does make a difference that some candidates have symbols after their names on the ballot while others do not. Voting studies conducted since 1940 indicated that party identification is the single most important influence on political opinions and voting. Almost two-thirds of the electorate has some form of party loyalty, and the tendency to vote according to party loyalty increases as the voter moves down the ballot to lesser known candidates seeking lesser known offices at the state and local level. Without a designation next to an Independent's name on the ballot, the voter has no clue as to what the candidate stands for. Thus, the state affords a crucial advantage to party candidates by allowing them to use a designation, while denying the Independent the crucial opportunity to communicate a designation of their candidacy.

Plaintiffs' second expert, Jack DeSario, was an Assistant Professor of Political Science at Case Western Reserve University in Cleveland, Ohio, from 1981–1988. He has a Ph.D. in Political Science from the State University of New York at Binghamton. DeSario has also served as an advisor on voting behavior to local and statewide election campaigns in Ohio.

In his affidavit, DeSario stated that Independents compose an increasingly large segment of the electorate, with approximately 34 percent of eligible voters identifying themselves as Independents. According to DeSario, Independent candidates are handicapped by their inability to communicate a political designation on the ballot. However, party candidates are afforded a "voting cue" on the ballot in the form of a party label which research indicates is the most significant determinant of voting behavior. Many voters do not know who the candidates are or who they will vote for until they enter the voting booth. Without a label, voters cannot identify the nonparty candidates or know what they represent. DeSario states that this effect is so substantial that Ohio dooms Independent candidates to failure by its means of structuring the ballot.

Plaintiffs' third expert, George Sapin, has been a marketing and communications professional for more than thirty years. He is currently the executive vice-president of an advertising firm in Cleveland, Ohio, and has many well-known corporate clients. In his affidavit, Sapin stated that based upon generally accepted communications and advertising principles, the denial of a ballot designation to Independent candidates causes substantial prejudice. Sapin stated that Ohio's ballot scheme is the equivalent of putting an unlabeled product on a shelf next to brand name products in a supermarket. Consumers would not choose the unlabeled product, because they have been conditioned by advertising to perceive quality in brand name products.

Similarly, the absence of a label for a candidate gives rise to mistrust and negative inferences.

Sapin further stated that he reviewed plaintiff Rosen's 1988 campaign materials. Rosen had certain points and positions and used several means of publicity to identify the term Independent with his platform. This use of a name and a label allowed people to make a connection between the candidate and his platform and to create an identification in the voter's mind. A ballot without the Independent designation would have denied Rosen the identification he had worked to establish at the crucial moment of choice in the election campaign.

Plaintiffs also submitted two interrogatories to defendant in an effort to determine what interests the State of Ohio asserted to support the denial of ballot designations to Independent candidates. The State responded that it has a strong, compelling state interest in minimizing ballot-generated voter confusion and in producing a manageable ballot. The state also asserted that such state interest is common knowledge in election law and that no witnesses were necessary to establish the State's compelling interest. It further stated that it has not considered or utilized any alternative provision for limiting ballot designations which would not exclude the designation Independent or Independent candidate.

Subsequently, on November 11, 1990, the district court granted plaintiffs' motion for summary judgment, declaring Ohio Rev. Code § 3505.03 unconstitutional. Defendant, the Ohio Secretary of State, timely appealed.

## II.

### A.

■ This court reviews a district court's grant of summary judgment de novo. *See Faughender v. City of North Olmsted, Ohio,* 927 F.2d 909, 911 (6th Cir.1991). Summary judgment is proper if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See Canderm Pharmacal, Ltd. v.*

*Elder Pharmaceuticals, Inc.,* 862 F.2d 597, 601 (6th Cir.1988).

### B.

■ In this case, because the 1988 general election has been held and plaintiff Rosen has been defeated, we will first consider the question of mootness. Although the election has been held, this case falls within the class of controversies "capable of repetition, yet evading review." *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). Two elements preclude a finding of mootness in the absence of a class action: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expirations, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *See First Nat'l Bank of Boston v. Bellotti,* 435 U.S. 765, 774, 98 S.Ct. 1407, 1414, 55 L.Ed.2d 707 (1978).

■ Both of these two elements are satisfied here. The parties have stipulated that Rosen intends to run as an Independent in future elections in Ohio. Thus, a reasonable expectation exists that Rosen will be subjected to the same action again. Moreover, the challenged action was too short in duration to be litigated prior to its expiration, the date of the election. Rosen was informed on August 4, 1988, that the designation Independent would not be placed on the general election ballot under his name. Inasmuch as this occurred a mere three months before the November general election, the parties were unable to obtain complete judicial review of the action prior to the election. There is every reason to believe that any future action involving the same parties and issues would take at least as long. Therefore, this issue is not moot.

### C.

Defendants argue that the district court erred in concluding that Ohio's enforcement of Ohio Rev.Code § 3505.03 violated plaintiffs'. First and Fourteenth Amend-

ment rights to freedom of speech, freedom of association, and equal protection under the United States Constitution. Before addressing this issue, however, it is necessary to briefly summarize Ohio's ballot scheme.

Under Ohio Rev.Code § 3501.01, candidates of a political party become eligible to have their names placed on the general election ballot via a primary election. However, a candidate not affiliated with a political party may have his or her name certified for placement on the general election ballot by filing a statement of candidacy and a nominating petition pursuant to Ohio Rev.Code § 3513.257.

Ohio Rev.Code § 3505.03 describes the form and content of the general election ballot. It provides in relevant part that

[u]nder the name of each candidate nominated at a primary election ... shall be printed, in less prominent type face than that in which the candidate's name is printed, the name of the political party by which the candidate was nominated or certified.

Except as provided in this section, no words, designations, or emblems descriptive of a candidate or his political affiliation, or indicative of the method by which the candidate was nominated or certified, shall be printed under or after a candidate's name which is printed on the ballot.

Thus, Ohio creates a distinction between party and Independent candidates in terms of treatment on the general election ballot.

### D.

In challenging the district court's grant of summary judgment in favor of plaintiffs, defendant argues that the district court erred in concluding that section 3505.03 burdened fundamental rights by (1) abridging plaintiffs' First Amendment rights to freedom of speech and freedom of association and (2) by denying plaintiffs the equal protection of the laws guaranteed by the Fourteenth Amendment. The district court's conclusion resulted from its review of section 3505.03 under the strictest level of constitutional scrutiny which required the State to show that the law advances a compelling state interest and is narrowly

tailored to serve that interest. *See Eu v. San Francisco County Democratic Cent. Committee,* 489 U.S. 214, 221, 109 S.Ct. 1013, 1019, 103 L.Ed.2d 271 (1989). Defendant asserts that the district court unduly magnified the character and nature of the asserted injury that nonparty affiliated candidates will suffer if there is no designation beneath their names on the ballot. Therefore, defendant argues that the strict scrutiny test was not the appropriate test for this case, but rather that the balancing test announced by the Supreme Court in *Anderson v. Celebrezze,* 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), is the appropriate constitutional analysis.

### E.

The Supreme Court has stated that "the Framers of the Constitution intended the States to keep for themselves, as provided in the Tenth Amendment, the power to regulate elections," and that "[e]ach State has the power to prescribe the qualifications of its officers and the manner in which they shall be chosen." *See Sugarman v. Dougall,* 413 U.S. 634, 647, 93 S.Ct. 2842, 2850, 37 L.Ed.2d 853 (1973) (citations and internal quotation omitted). Moreover, the Constitution specifically authorizes states to regulate "[t]he Times, Places and Manner of holding Elections for Senators and Representatives...." U.S. Const. art. I, § 4, cl. 1. Accordingly, the Supreme Court has recognized that "as a practical matter, there must be a substantial regulation of elections if they are going to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *See Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). However, a state's broad power to prescribe the time, place and manner of elections "does not extinguish the State's responsibility to observe the limits established by the First Amendment rights of the State's citizens." *See Tashjian v. Republican Party of Connecticut,* 479 U.S. 208, 217, 107 S.Ct. 544, 550, 93 L.Ed.2d 514 (1986).

This case concerns the effect of Ohio's regulations concerning the content

of its general election ballot. An election ballot is a State-devised form through which candidates and voters are required to express themselves at the climactic moment of choice. *See Bachrach v. Secretary of Commonwealth,* 382 Mass. 268, 415 N.E.2d 832, 834 (1981) (citing *Anderson v. Martin,* 375 U.S. 399, 402, 84 S.Ct. 454, 455, 11 L.Ed.2d 430 (1964)). The ballot is necessarily short; it does not allow for narrative statements by candidates and requires responses by the electors simple enough to be counted. *Bachrach,* 415 N.E.2d at 834–35. Within these limitations, a State has discretion in prescribing the particular makeup of the ballot for its various elections; however, this discretion must be exercised in subordination to relevant constitutional guaranties. *Id.* (citing *Bullock v. Carter,* 405 U.S. 134, 140–41, 92 S.Ct. 849, 854–55, 31 L.Ed.2d 92 (1972).

■ With respect to the political designations of the candidates on nomination papers or on the ballot, a State could wash its hands of such business and leave it to the educational efforts of the candidates themselves, or their sponsors, during the campaigns. *Bachrach,* 415 N.E.2d at 835. Once a State admits a particular subject to the ballot and commences to manipulate the content or to legislate what shall and shall not appear, it must take into account the provisions of the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws. *Id.* (citing *Riddell v. Nat'l Democratic Party,* 508 F.2d 770, 775–779 (5th Cir.1975).

### F.

■ The questions presented by a challenge to a specific provision in a state's election law cannot be resolved by applying a "litmus-paper test." *See Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). There is no self-executing rule that is a substitute for the "hard judgments that must be made." *Id.* In *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 1570, 75 L.Ed.2d 547 (1983), the Supreme Court set forth an analytical process for making such "hard judgments" in the context of a challenge to a provision of a state's election laws.

[A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Id.* Thus, the district court erred in applying the strict scrutiny test to this case. However, this does not end the analysis, as we must now apply the *Anderson* balancing test to determine whether Ohio Rev. Code § 3505.03 is unconstitutional.

The first step in the *Anderson* analysis is to consider the character and magnitude of the alleged injury to plaintiffs' First and Fourteenth Amendment rights. As the State correctly points out, this is not the usual ballot access case. Section 3505.03 did not prevent Rosen from having his name on the general election ballot. However, Rosen argues that although his name appeared on the ballot, the State essentially rendered this nugatory by providing a "voting cue" to his major party opponents at the crucial moment in the election campaign.

■ The primary concern in any ballot access case is not the interests of the candidate but of the voters who support the candidate and the views espoused by the candidate. *Cromer v. State of South Carolina,* 917 F.2d 819, 822 (4th Cir.1990) (citing *Anderson,* 460 U.S. at 786–88, 806, 103 S.Ct. at 1568–70, 1579). The voter interests at stake are basic associational rights secured against state action by the First and Fourteenth Amendments, and any restriction on ballot access by candidates nec-

essarily burdens the rights of their supporters to some extent. *Id.*

Ohio correctly notes that this case is similar to the case of *Dart v. Brown*, 717 F.2d 1491 (5th Cir.1983), *cert. denied*, 469 U.S. 825, 105 S.Ct. 105, 83 L.Ed.2d 49 (1984). In *Dart*, the Fifth Circuit upheld a Louisiana statute which permitted the political party affiliation of recognized party candidates to be printed on the ballot next to their name but required the space to be left blank for candidates not affiliated with recognized political parties. Dart's political party affiliation, Libertarian, was not placed on the ballot because the Libertarian party was not a recognized political party in Louisiana. The Fifth Circuit applied the *Anderson* balancing test and upheld the Louisiana statute because the statute did not prevent Dart from having his name placed on the ballot. The Fifth Circuit concluded that any injury to the Fifth and Fourteenth Amendment rights of Dart's supporters was minor, indirect, and remote since they had full opportunity to vote for him and have their vote counted.

However, the Fifth Circuit also noted that the First Amendment protects the right to cast a meaningful vote for a candidate of one's choice and to meaningfully associate for the advancement of political beliefs. *Id.* at 1504. The Fifth Circuit went on to note that if it were true to a significant extent that the lack of party designation impaired the ability to cast a meaningful vote or to meaningfully associate, it would reach a different result. *Id.* at 1505. The Fifth Circuit stated, however, that no such evidence appeared in the record before it. *Id.*

■ However, such evidence does appear in the record before this court in the form of the affidavits from plaintiffs' three expert witnesses. These affidavits show that the State infringes upon the right of supporters of Independent candidates to meaningfully vote and meaningfully associate by providing a "voting cue" to Democratic and Republican candidates which makes it virtually impossible for Independent candidates to prevail in the general election.

Furthermore, in this case, where summary judgment was contemplated, the State did not respond to plaintiffs' affidavits with counteraffidavits, interrogatories, or any other evidence showing that there was a genuine issue for trial with regard to the burden placed by section 3505.03 on Independent candidates. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Thus, plaintiffs have established that Ohio Rev.Code § 3505.03 burdens the First and Fourteenth Amendment rights of the supporters of Independent candidates.[2]

The next step in the *Anderson* analysis is to identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. The *Anderson* analysis requires that we determine the legitimacy and strength of each interest and consider the extent to which these interests make it necessary to burden the plaintiffs' rights.

Ohio has identified the precise interests which it relied on as the justification for section 3505.03. The State asserts that it has a strong, compelling interest in minimizing ballot-generated voter confusion and in producing a manageable ballot. However, a review of the record reveals that the compelling state interests advanced by the State of Ohio in this case are somewhat specious, and section 3505.03 is nothing more than a deliberate attempt by the State to protect and guarantee the success of the Democratic and Republican parties.

---

**2.** At oral argument, the State of Ohio relied on the recent Supreme Court decision in *Burdick v. Takushi*, —— U.S. ——, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) as support for its argument. However, *Burdick* is distinguishable from this case. *Burdick* involved a Hawaii statute which permitted easy access to the ballot for all candidates, but as a consequence prohibited write-in voting at the general election. Since this case does not involve a denial of access to the ballot, but rather involves an attempt by the State of Ohio to give a voting cue on the general election ballot to established party candidates as opposed to Independent candidates, we find *Burdick* to be inapplicable here.

Ohio first asserts that it has a compelling state interest in minimizing ballot-generated voter confusion. It has long been recognized that states have a compelling interest in regulating the election process and avoiding voter confusion. *See Lubin v. Panish*, 415 U.S. 709, 715, 94 S.Ct. 1315, 1319, 39 L.Ed.2d 702 (1974). However, "[a] State's claim that it is enhancing the ability of it citizenry to make wise decisions by restricting the flow of information to them must be viewed with some skepticism." *See Eu*, 489 U.S. at 228, 109 S.Ct. at 1023 (quoting *Anderson*, 460 U.S. at 798, 103 S.Ct. at 1575). In its brief on appeal, Ohio concedes that "General election ballot designations are simply government provided information designed to inform voters of the political party affiliation of each candidate...." Appellant's Brief, pp. 7–8. The state asserts that it may inform voters of the political party affiliation of each party candidate because it "has a compelling interest in supporting its party system by regulating the election process ... and [a] legitimate interest in protecting political parties...." Appellant's Brief, p. 17.

■■■■■■■ One of the electoral interests which states may protect by reasonable regulation is the integrity of established and formally recognized major political parties; however, this interest may not extend to the effective exclusion of Independent and new party candidacies. *See Cromer*, 917 F.2d at 823. The qualitative difference between an Independent candidacy and a party candidacy justifies differences in treatment. *Storer*, 415 U.S. at 745, 94 S.Ct. at 1286. With an Independent candidate, a state is free to assure itself he or she is "truly independent." *Id.* at 746, 94 S.Ct. at 1287. However, that does not appear to be Ohio's purpose in this case. In its brief on appeal, Ohio states, "many voters who register as 'Independents' probably do so to avoid public disclosure of their political support of or affiliation with the Democratic or Republican parties." Appellant's Brief, p. 20. Thus, Ohio apparently does not believe that there really is such a thing as an Independent voter; rather, Independent voters are really "disguised" Republicans or Democrats.

Moreover, Ohio's claim that by excluding the designation Independent or Independent candidate from the ballot, it is producing a more manageable ballot is not substantiated by the facts of this case. By excluding such designations from the ballot, Ohio will not produce a shorter or smaller ballot. To the contrary, Ohio produces a ballot which gives a "voting cue" or "clue" to Democratic and Republican candidates but excludes such a "voting cue" to Independent or third-party candidates.

Finally, in light of the history of Ohio election laws, the State's claim of compelling interest should be viewed with skepticism. In *Williams v. Rhodes*, 393 U.S. 23, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968), the Supreme Court overturned a series of Ohio election laws that made it "virtually impossible" for candidates unaffiliated with the two established parties, Democrats and Republicans, to be placed on the ballot. *Id.* at 25, 89 S.Ct. at 8. Those laws also made no provision for ballot position for Independent candidates as distinguished from political parties. *Id.* at 26, 89 S.Ct. at 8. The Court declared that the legislation limited political participation of the third party and Independent candidates so dramatically that the Republicans and Democrats had a "complete monopoly." *Id.* at 32, 89 S.Ct. at 11. The resulting burden on voting and First Amendment associational rights was held to be "an invidious discrimination, in violation of the Equal Protection Clause." *Id.* at 34, 89 S.Ct. at 12.

■■■■ The final step in the *Anderson* analysis is to weigh all the factors and decide whether the challenged provision is unconstitutional. As described above, section 3505.03 burdens the First Amendment right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of political affiliation, to cast their votes effectively. Moreover, the statute violates the Equal Protection Clause of the Fourteenth Amendment because it places unequal burdens on Independent and third-party candidates and is designed to give Democrats

and Republicans a decided advantage at the polls in a general election.

Moreover, the justifications advanced by the State for the burdens imposed on Independent candidates as a result of the statute are highly questionable. Therefore, in weighing the burdens imposed by the statute against the justification advanced for those burdens, we conclude that Ohio Rev. Code § 3505.03 is unconstitutional.

As stated above, the district court erred in utilizing the strict scrutiny test in invalidating Ohio Rev.Code § 3505.03. However, de novo review of the record utilizing the *Anderson* balancing test results in the conclusion that section 3505.03 is unconstitutional. Where the district court has reached the right conclusion for the wrong reasons, we can affirm for reasons other than those stated by the district court. *See Foster v. Kassulke*, 898 F.2d 1144, 1146 (6th Cir.1990); *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir.1985) (per curiam). Moreover, this court can affirm even if the district court has relied on an erroneous basis to grant summary judgment so long as the opposing party is not denied an opportunity to respond to the new theory. *See Boger v. Wayne County*, 950 F.2d 316, 322 (6th Cir.1991). Defendant has had the opportunity to respond to the *Anderson* balancing test; indeed, defendant relied on the *Anderson* balancing test as the basis for its arguments in its reply brief.

### III.

For the reasons stated, we hold that Ohio Revised Code § 3505.03 is unconstitutional because it violates the First and Fourteenth Amendment rights of Independent candidates to be so designated on Ohio's general election ballots. Accordingly, the district court's grant of summary judgment is AFFIRMED.