James **SCHRADER**, et al., Plaintiff,

v.

Bob **TAFT**, Secretary of State, et al., Defendant.

No. C–3–98–357.

United States District Court, S.D. Ohio, Western Division.

Dec. 13, 1999.

William V. Stephenson, Wood County Public Defender, Bowling Green, Oh, for plaintiffs.

Arthur James Marziale, Jr., Ohio Attorney General, Chief Counsel's Staff Section, Columbus, OH, Jeffrey Hartranft, Assistant Attorney General, Workers' Compensation Section, Columbus, OH, for Bob Taft, defendant.

Thomas Edward Trempe, Clark County Prosecutor, Springfield, OH, for Clark County Board of Elections, defendant.

**DECISION AND ORDER GRANTING PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT**

MERZ, United States Magistrate Judge.

This case is before the Court on Cross–Motions for Summary Judgment (Doc. ##8, 11, and 13) and Supplemental Cross–Motions for Summary Judgment (Doc. ##29, 31).

**PROCEDURAL POSTURE**

This action was filed August 20, 1998, shortly after Secretary of State Taft denied Mr. Schrader's written demand for the relief he seeks here. Plaintiffs James Schrader, Bruce Wilson, and the Libertarian party of Ohio brought this action pursuant to 42 U.S.C. § 1983 to compel Defendants Bob Taft, then Ohio's Secretary of State[1], and the Clark County Board of

---

**1.** J. Kenneth Blackwell, Bob Taft's successor in office as Secretary of State, has been sub-stituted as a party Defendant (Doc. # 27).

Elections to designate Mr. Schrader as a "Libertarian" on the November, 1998, general election ballot. The parties agreed that the last date on which Secretary of State Taft could make a decision affecting ballot language was September 29, 1998. They therefore also agreed to present the case to the Court on cross-motions for summary judgment, without an evidentiary hearing and without reply memoranda. After the Court decided the case on that basis, Defendants objected that Plaintiffs had changed theories and requested an opportunity to supplement the record. The Court then converted its Decision and Order to a preliminary injunction, Defendants designated Mr. Schrader as a "Libertarian" on the ballot in the Seventh Congressional District, and he received almost 9,000 votes, but was not elected.

Subsequent to the November, 1998, election, the parties have submitted additional materials, but still stipulate that the case be decided on cross-motions for summary judgment. The Court is accordingly empowered and indeed constrained to make findings of fact from these submissions[2].

Since the election for which Mr. Schrader sought ballot designation has concluded, the Court requested the parties to comment on whether the issues raised had become moot. All parties agree that they are not, in that the case presents issues capable of repetition yet evading review (See Doc.#33, 34). The Court agrees. See *Rosen v. Brown*, 970 F.2d 169 (6th Cir.1992).

## OPINION

Plaintiff Libertarian Party of Ohio (the "Party") was formed in 1972 and is the recognized Ohio affiliate of the Libertarian Party, founded in Colorado in 1971 (Affidavit of James H. Babka, Jr., Exhibit to Doc. #13). It has placed candidates for President of the United States on the Ohio ballot by petition in every presidential election after 1972(Id.). One becomes a member of the Libertarian Party of Ohio by contributing at least $25.00 and signing a pledge showing support for Party principles (Id.). The party has nearly one thousand members statewide and fifty-one members residing in the Seventh Congressional District (Id.)

The Libertarian Party of Ohio held its 1998 annual convention business meeting in Akron on April 25, 1998 (Minutes, Exhibit to Doc. #13). Among other actions, it nominated Mr. Schrader as its candidate for the United States House of Representatives from the Seventh District by voice vote (Id.) No other persons were nominated for any public office, but Scott Smith reported that 9,991 signatures had been gathered "towards the full-party status petition drive" (Id.) It has been publicly reported, although the evidence is not before the Court, that the Libertarian Party has gathered enough signatures to achieve recognized party status. However, if it fails to poll 5% of the vote in the Presidential ballot in 2000, it will lose that status again.

Shortly after receiving the Party nomination, Mr. Schrader filed nominating petitions with Defendant Clark County Board of Elections containing 3,168 signatures (Schrader Affidavit, Exhibit to Doc. #13). Only 1,876 valid signatures were required and at least that many were contained in Mr. Schrader's petitions, so he was been certified to appear on the ballot in the November general election. Pursuant to the preliminary injunction, he appeared with the "Libertarian" designation.

Ohio Revised Code § 3505.03 provides in pertinent part:

Under the name of each candidate nominated at a primary election and each candidate certified by a party committee to fill a vacancy under section 3513.31 of the Revised Code shall be printed, in

---

**2.** Contrast the situation where a court is faced with cross-motions for summary judgment, without a stipulation that the case be decided on such motions, and may therefore find that there are genuine issues of material fact which prevent a judgment for either side. See Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2920 at note 22.

less prominent type face than that in which the candidate's name is printed, the name of the political party by which the candidate was nominated or certified.

Except as provided in this section, no words, designations, or emblems descriptive of a candidate or his political affiliation or indicative of the method by which the candidate was nominated or certified, shall be printed under or after a candidate's name which is printed on the ballot.

The parties agree that § 3505.03, correctly interpreted, prevented Defendants from listing Mr. Schrader on the ballot as he requested. The sole question before this Court is whether § 3505.03 can be constitutionally applied to deny Mr. Schrader or a similarly situated person the ballot designation he and the other Plaintiffs sought.

It is uncontested that, while Mr. Schrader is the nominee of the Libertarian Party of Ohio, he was not nominated at a primary election. The Party did not have a primary election because it was not a "qualified" party in 1998. Under Ohio Revised Code § 3517.01, a political party within the meaning of Ohio's election laws (Title 35 of the Revised Code) is any group of voters (1) whose candidate for governor or nominees for presidential electors received at least five per cent of the vote in the last gubernatorial or presidential election or (2) subsequent to any election in which it did not receive five per cent of the vote, filed with the secretary of state a petition to be a political party signed by one per cent of the voters in the last gubernatorial or presidential election. The petition must be filed not later than 120 days before the next primary election in which the group of voters, now a party, intends to participate. If the party thereafter fails to get five per cent of the gubernatorial or presidential vote, it ceases to be a political party, but nothing prevents it from re-petitioning for ballot access. The Libertarian Party of Ohio achieved party status in 1982, but has failed to maintain it since (Babka Affidavit, Winger Affidavit,

Exhibits to Doc. # 13), although since the 1998 general election it apparently has again gathered enough signatures statewide.

Plaintiffs rely heavily on *Rosen v. Brown*, 970 F.2d 169 (6th Cir.1992). A detailed analysis of that decision is required to decide this case. The case was brought by Russell Rosen, a candidate nominated by petition (Ohio Revised Code § 3513.257), just as Mr. Schrader was, for the Ohio House of Representatives. He was not affiliated with any political party and sought the designation "Independent" on the ballot, which Defendants refused under Ohio Revised Code § 3505.03.

The Sixth Circuit held that a ballot access case of this sort must be judged under the standard adopted by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), rather than a strict scrutiny test. That standard is:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It must then identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Rosen*, 970 F.2d at 175, quoting *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564. Applying *Anderson* to Ohio Revised Code § 3505.03, the Sixth Circuit made a number of important rulings:

1. A general election ballot is necessarily short. It does not allow for narrative statements by candidates and requires a response which must be

counted. 970 F.2d at 175, citing *Bachrach v. Secretary of Commonwealth,* 382 Mass. 268, 415 N.E.2d 832 (1981). Within those parameters, the State has discretion which must be exercised "in subordination to relevant constitutional guaranties."

2. Although a State would be free to print no designations on the ballot, once it decides to do so, it must take into account freedom of speech, freedom of association, and equal protection guaranties. *Id.*, citing *Bachrach* and *Riddell v. Nat'l Democratic Party,* 508 F.2d 770, 775–79 (5th Cir.1975).

3. "The primary concern in any ballot access case is not the interests of the candidate but of the voters who support and candidate and the views espoused by the candidate." *Id.*, citing *Cromer v. State of South Carolina,* 917 F.2d 819, 822 (4th Cir. 1990) (citing *Anderson*). Failure to have a "voting cue" on the ballot such as is provided to Republican and Democratic candidates "make it virtually impossible for Independent candidates to prevail in the general election." *Id.* at 176.

4. "Ohio has identified the precise interests which it relied on as a justification for section 3505.03," to wit, "minimizing ballot-generated voter confusion" and "producing a manageable ballot." These asserted interests are "somewhat specious, and section 3505.03 is nothing more than a deliberate attempt by the State to protect and guarantee the success of the Democratic and Republican parties." *Id.*

5. While a State may protect the integrity of established and formally recognized major political parties, it is not free to do so by excluding Independent and new party candidacies. *Id.* at 177.

6. Excluding the "Independent" designation does not result in a more manageable ballot. *Id.*

In granting the preliminary injunction in this case, the Court held:

Applying the *Anderson* test as interpreted by the Sixth Circuit in *Rosen,* this Court concludes that Ohio Revised Code § 3505.03 as applied by Defendants to refuse to designate Mr. Schrader as "Libertarian" violates the First Amendment freedom of association rights of all Plaintiffs and the Fourteenth Amendment equal protection rights of Mr. Schrader for the following reasons.

First of all, the associational rights of these Plaintiffs are stronger than those of the plaintiffs in Rosen. Plaintiffs stand for something: the political principles of the Libertarian Party. How much a voter understands by that designation will depend in large part on how successful plaintiffs are in communicating, by means other than the ballot designation, what those principles are. In contrast, the label "Independent" does not necessarily convey any information about a candidate except that he or she is not an endorsed Democrat or Republican. If the associational interests of "independents" are strong enough to override § 3505.03, *a fortiori* the interests of Libertarians are strong enough to do the same.

Secondly, Mr. Schrader's equal protection interests are identical to those of Mr. Rosen. If Mr. Rosen was unconstitutionally disadvantaged by the absence of a "voting cue," Mr. Schrader, nominated under the same statute and facing the same lack of "voting cue," will be equally disadvantaged.

Third, the State of Ohio has identified no interests here different from those identified in *Rosen,* but those interests do not weigh any more heavily here than in the prior case. The ballot is already limited to a manageable size by requiring that those not nominated by primary

obtain a significant number of petition signatures. The label "Libertarian" is certainly no more confusing than "Independent" and arguably less so. It is not confusingly like the label for any other party and the Secretary of State has independent authority to exclude such confusing party names in any event. It is almost certainly more descriptive of Mr. Schrader's political beliefs than the labels "Natural Law" or "Reform" which belong to the two "qualified" minor parties in Ohio (See Affidavit of John Bender, attached to Doc. # 11).

Decision and Order, Doc. # 14.

■ Defendant's Supplemental Motion for Summary Judgment strongly argues that an independent candidate and a third-party candidate are very different and the State has different interests in regulating them. Defendant therefore argues that *Rosen* should not govern this case.

First of all, Defendant argues that Ohio Revised Code § 3505.03 serves an important interest in protecting the integrity of the election process which was violated in this case. Mr. Schrader circulated his petitions to obtain ballot access as a non-party candidate before he had been formally nominated by the Libertarian Party at its April, 1998, convention. Although he personally had modified the part-petitions to indicate that he was the Libertarian candidate, the State argues (1) his method of proceeding was misleading because he was not yet the Party candidate and (2) nothing would prevent some other candidate, under the Court's preliminary injunction rationale, from circulating petitions with no label at all and then insisting on a ballot designation which "best expressed his views" but which was discordant with the opinions of those who had nominated him.

The first of these objections does not speak to the ballot label issue at all, but to the content of nominating petitions. Nothing in this decision should be read to limit the authority of the State to control the content of petitions to assure they are truthful. The State's assertion, however, that Mr. Schrader was not the Party's candidate when he circulated the petitions rings somewhat hollow in that Ohio does not have a legal test for when someone is the "official" candidate of a non-recognized party. By limiting the legal definition of political party as set forth above, Ohio has forsworn any attempt to regulate how minor or non-recognized parties nominate candidates.

■ The second objection is also not compelling. As the Sixth Circuit held in *Rosen,* the candidate has the right to a ballot "cue" for the voters and the voters have a correlative right to information, albeit abbreviated, about what the candidate stands for. The requirement that a candidate not nominated by a qualified party obtain ballot access by petition is designed to ensure that every candidate on the ballot has some minimum level of support, so that the ballot is of a manageable size. If the State is concerned about designations which are confusingly similar to others already on the ballot, the Secretary of State has independent authority to regulate that subject. Again, if the State is concerned that a candidate nominated by petition would by ballot designation claim to represent a non-qualified political party, it has ample means to prevent that (e.g., by recognizing a "minor party status" and giving its officers veto power over the use of the designation) without altogether preventing a petition-nominated candidate from giving any ballot cue, thereby invading his Equal Protection rights.

■ The State plainly has a valid interest, however, in limiting ballot access to parties which are qualified. *Anderson v. Celebrezze,* 460 U.S. at 788, 103 S.Ct. 1564; see also *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 117 S.Ct. 1364, 137 L.Ed.2d 589, 603 (1997). Nothing in this Decision should be read as casting doubt on the validity of Ohio Revised Code § 3517.01.

Accordingly, the Court concludes that denial of a ballot label or cue of the sort

sought by Mr. Schrader to him or to others similarly situated denies their First and Fourteenth Amendment rights. Since the parties agree that Ohio Revised Code § 3505.03 is properly interpreted to require such a denial, the Court hereby declares the statute, as so interpreted, to be unconstitutional and therefore invalid.

The Clerk will enter final judgment in favor of the Plaintiffs and against the Defendants.