RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0048P (6th Cir.)
File Name: 01a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

JAMES SCHRADER; BRUCE
WILSON; LIBERTARIAN PARTY
OF OHIO,
     *Plaintiffs-Appellees,*

    *v.*

J. KENNETH BLACKWELL,
Ohio Secretary of State,
    *Defendant-Appellant,*

CLARK COUNTY BOARD OF
ELECTIONS,
    *Defendant.*

No. 00-3044

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 98-00357—Michael R. Merz, Magistrate Judge.

Argued: January 31, 2001

Decided and Filed: February 23, 2001

1

Before:  DAUGHTREY and GILMAN, Circuit Judges;
HEYBURN, District Judge.[*]

———————————

**COUNSEL**

———————————

**ARGUED:** Arthur James Marziale, Jr., OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. William V. Stephenson, WOOD COUNTY PUBLIC DEFENDER, Bowling Green, Ohio, for Appellees. **ON BRIEF:** Arthur James Marziale, Jr., OFFICE OF THE ATTORNEY GENERAL, Columbus, Ohio, for Appellant. William V. Stephenson, WOOD COUNTY PUBLIC DEFENDER, Bowling Green, Ohio, for Appellees.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  James Schrader received the nomination of the Libertarian Party of Ohio to be its candidate for the United States House of Representatives from the Seventh Congressional District of Ohio in the 1998 general elections.  Schrader filed a nominating petition with the Clark County Board of Elections that contained 3,168 signatures, a number sufficient under Ohio law to secure his place on the ballot.  The Libertarian Party of Ohio, however, had not met the requirements to be recognized as a political party in Ohio at that time.  As a result, Ohio law prohibited Schrader from designating his affiliation with the Libertarian Party as a partisan "cue" on the ballot.

Schrader, the Libertarian Party, and Bruce Wilson, a voter, filed an action under 42 U.S.C. § 1983 against Ohio's Secretary of State and the Clark County Board of Elections to gained access to appear on the general-election ballot under the independent-petition procedure as an "Independent."

In conclusion, we acknowledge that Ohio's ballot scheme places a burden on political parties to become recognized under Ohio law before a member can appear on the general-election ballot as a candidate of that party.  We hold, however, that this burden is not unreasonable in light of Ohio's legitimate interests and is not so onerous as to make the law unconstitutional under the *Anderson* balancing test. Even though the Ohio legislature reenacted Ohio Revised Code § 3505.03 without reflecting the effect of this court's ruling in *Rosen* as it pertains to independent candidates, Ohio retains the right to ensure that candidates claiming to represent a political party meet the statutory requirements necessary to establish that the putative party has obtained "some preliminary showing of a significant modicum of support" before appearing on the ballot as a candidate of that party.  *Jenness*, 403 U.S. at 442.  We therefore hold that the denial of party-affiliation voting cues to candidates of unqualified political parties under § 3505.03 of the Ohio Revised Code survives constitutional challenge.

**III. CONCLUSION**

For all of the reasons set forth above, we **REVERSE** the judgment of the district court.

———————————

[*] The Honorable John G. Heyburn II, United States District Judge for the Western District of Kentucky, sitting by designation.

emphasizes the importance of our role under *Anderson* to balance Ohio's interests in regulating political parties against the constitutional rights of Schrader and the Libertarian Party of Ohio.

Furthermore, other circuits have engaged in similar reviews of state election laws and have concluded that the states have significant authority to regulate the formation of political parties and the identification of candidates on the ballot. *See McClaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215 (4th Cir. 1995) (upholding as constitutional North Carolina's requirement that a candidate of a new political party gather signatures of 2% of voters statewide, with at least 200 signatures from registered voters residing in each of 4 congressional districts, and then requiring the new party candidate to poll at least 10% of votes in the general election for that party to remain on the ballot); *Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir. 1988) (finding constitutional Oklahoma's election scheme that authorizes candidates of recognized parties to be automatically identified on the ballot by party label, but requires unrecognized parties to file petitions bearing the signatures of at least 5% of the total votes cast in the last general election to achieve similar identification); *Libertarian Party v. Florida*, 710 F.2d 790, 795 (11th Cir. 1983) (upholding as constitutional an election law under which "a minor political party may not run a candidate in a local election without first obtaining access to the state's general election ballot through the 3% statewide petitioning requirement").

Because "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," *Anderson*, 460 U.S. 788, a party challenging Ohio Revised Code § 3505.03 bears a heavy constitutional burden. "That a particular individual may not appear on the ballot as a particular party's candidate does not severely burden that party's associational rights." *Timmons*, 520 U.S. at 359. With or without the cue "Libertarian," Schrader had

designate Schrader as a "Libertarian" on the ballot, claiming that the Ohio ballot-form statute violated the First and Fourteenth Amendments to the United States Constitution. The district court held for Schrader, declaring that the Ohio statute prohibiting voting cues for unqualified political parties was unconstitutional. The state of Ohio now challenges that decision. For the reasons set forth below, we **REVERSE** the judgment of the district court.

## I. BACKGROUND

### A.  Ohio election laws pertaining to voting cues

At issue in this appeal are two sections of the Ohio Revised Code that combine to regulate how eligible candidates appear on the general-election ballot. The first describes the ballot format. *See* Ohio Rev. Code § 3505.03. Voting cues, which are descriptions of political affiliation, are allowed under this section, but only for candidates of political parties that are recognized under Ohio law. "Under the name of each candidate nominated at a primary election and each candidate certified by a party committee . . . shall be printed, in less prominent type face than that in which the candidate's name is printed, the name of the political party by which the candidate was nominated or certified." *Id.*

The second relevant section defines a political party under Ohio law. *See* Ohio Rev. Code § 3517.01. "A political party . . . is any group of voters that, at the most recent regular state election, polled for its candidate for governor in the state or nominees for presidential electors at least five per cent of the entire vote cast for that office or that filed with the secretary of state." *Id.* If, however, a new political party seeks to become qualified, then it must file a "petition signed by qualified electors equal in number to at least one per cent of the total vote for governor or nominees for presidential electors at the most recent election, declaring their intention of organizing a political party, the name of which shall be stated in the declaration, and of participating in the succeeding primary election, held in even-numbered years, that occurs more than one hundred twenty days after the date

of filing." *Id.* As a result, a candidate must be the nominee of a qualified party as defined under Ohio Revised Code § 3517.01 in order to obtain a partisan cue on the ballot pursuant to Ohio Revised Code § 3505.03. An independent candidate for election to an office, in contrast, must simply file a statement of candidacy and a nominating petition with the requisite number of signatures. *See* Ohio Rev. Code § 3513.257.

In sum, all candidates listed on the Ohio ballot must gain access either as the nominee of a qualified political party, through the independent-petition procedure, or as a member of a previously unqualified political party that obtains enough signatures to become a political party as defined in Ohio Revised Code § 3517.01. Both Schrader and the Ohio Attorney General agree that Ohio Revised Code § 3505.03 was properly interpreted to deny Schrader, and other future candidates who, like him, are members of unqualified political parties, a partisan cue on the ballot.

Ohio's election laws have been the subject of constitutional scrutiny in several prior cases. One is *Williams v. Rhodes*, 393 U.S. 23, 32 (1968) (declaring Ohio's ballot-access scheme that required a new party to collect the signatures of 15 percent of the electors in the previous gubernatorial election unconstitutional because it was so restrictive, and because it effectively provided the Democratic and Republican parties with a "complete monopoly"). Another is *Anderson v. Celebrezze*, 460 U.S. 780 (1983) (striking down Ohio's early deadline for independent candidates to file a statement of candidacy and a nominating petition as an unconstitutional burden on the voting and associational rights of their supporters). More recently, however, this court has upheld the signature requirement of Ohio's independent-petition procedure under Ohio Revised Code § 3513.257, finding that the burden of obtaining the signatures of one percent of the qualified electors in the last gubernatorial election is not unconstitutionally burdensome. *See Miller v. Lorain County Bd. of Elections*, 141 F.3d 252 (6th Cir. 1998).

system that distinguishes between candidates of "political parties" and unrecognized "political bodies," and requires independent candidates and candidates of unrecognized political bodies to file nominating petitions containing the signatures of five percent of the eligible voters in the previous election).

In declaring § 3505.03 unconstitutional, the district court nevertheless maintained that "[n]othing in [its] Decision should be read as casting doubt on the validity of Ohio Revised Code § 3517.01." This position, however, is untenable. By allowing a candidate who gains access to the ballot through the independent-petition procedure to choose any partisan cue that he or she desires, the district court has in effect denied Ohio the right to reasonably regulate the formation of political parties within its borders.

Finally, the *Anderson* test requires balancing the character and magnitude of the constitutional injury to Schrader and the Libertarian Party of Ohio against the state's interests. Ohio argues that its ballot-access scheme that differentiates between the party-petition procedure and the independent-petition procedure is precisely the type of reasonable regulation that requires a candidate of an unqualified party to show a "significant modicum of support" in order to secure a party-affiliation voting cue on the ballot. The Supreme Court is in agreement: "The State surely has a valid interest in making sure that minor and third parties who are granted access to the ballot are bona fide and actually supported, on their own merits, by those who have provided the statutorily required petition or ballot support." *Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 366 (1997).

Schrader, however, maintains that *Timmons* is factually distinguishable and should not apply to the case before us. At issue in *Timmons* was Minnesota's antifusion law, which the Court upheld. Under that law, a candidate on a ballot cannot appear as the candidate of more than one party. *See id.* at 354. Although the context of the *Timmons* decision is different from the Ohio law under scrutiny here, *Timmons*

government by electing its candidates to public office. From the standpoint of a potential supporter, affiliation with a new party would mean giving up his ties with another party or sacrificing his own independent status, even though his possible interest in the new party centers around a particular candidate for a particular office.

*Storer v. Brown*, 415 U.S. 724, 745 (1974) (upholding as constitutional California's requirement that an independent candidate for congressional or presidential office must be politically disaffiliated for at least one year prior to the immediately preceding primary election). The district court's heavy reliance on *Rosen* was therefore misplaced, particularly in light of Ohio's interests that must be balanced against the encroachment upon Schrader's and the Libertarian Party of Ohio's First and Fourteenth Amendment rights.

Moving to the second step of the *Anderson* balancing test, we must now identify and evaluate Ohio's interests that would justify imposing a burden on associational rights. *See Anderson*, 460 U.S. at 789. No one questions the basic premise that states are entitled to regulate elections. "[A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process." *Storer*, 415 U.S. at 730. Ohio claims that denying party labels to candidates of unqualified political parties minimizes voter confusion, prevents voter deception, and promotes political stability.

The Supreme Court has acknowledged a state's strong interest in maintaining the stability of its political system. *See Eu*, 489 U.S. at 226; *Storer*, 415 U.S. at 736. Additionally, the Court has held that there is an "important state interest in requiring some preliminary showing of a significant modicum of support before printing the name of a political organization's candidate on the ballot – the interest, if no other, in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (upholding Georgia's

The specific sections at issue in Schrader's case, §§ 3505.03 and 3517.01, were scrutinized by this court in *Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992). In particular, the plaintiff in *Rosen* challenged the failure of § 3505.03 to allow the cue of "Independent" to be used for candidates who gain access to the ballot through the independent-petition procedure. This court held that § 3505.03 was "unconstitutional because it violates the First and Fourteenth Amendment rights of Independent candidates to be so designated on Ohio's general election ballots." *Rosen*, 970 F.2d at 178.

Despite this court's ruling in *Rosen*, the Ohio legislature reenacted § 3505.03 in 1995 without any changes to the portion of the statute that deals with voting cues on the ballot. Schrader is thus challenging the same voting-cue language in Ohio Revised Code § 3505.03 that this court struck down vis-a-vis independent candidates in *Rosen*. At oral argument, however, counsel for the state noted that Ohio regularly follows *Rosen*, even though the relevant portion of the statute has not changed. It does so by informally asking candidates who gain access to the ballot through the independent-petition procedure whether they wish to have the cue "Independent" affiliated with their names on the general-election ballot.

Schrader notes that as a result of the connection between § 3505.03 and § 3517.01, a previously unqualified party that wishes to place a candidate on the general-election ballot with the party's voting cue must file the requisite number of signatures approximately one year before the general election. This results in an earlier filing deadline for candidates of unqualified political parties than for independent candidates. The discrepancy in the timing of the filing deadlines, however, was not raised as an issue on appeal and is therefore not before us. Schrader obtained access to the ballot under the independent-petition procedure, and his only challenge is to the constitutionality of Ohio's ballot-cue system under § 3505.03.

## B. Procedural history of the Libertarian Party of Ohio's challenge to the Ohio ballot scheme

The Libertarian Party of Ohio was formed in 1972 and is the Ohio affiliate of the national Libertarian Party, founded in Colorado in 1971. It obtained the status of a political party as defined under Ohio Revised Code § 3517.01 in 1982, and was therefore eligible for a voting cue on the general-election ballot that year as permitted by Ohio Revised Code § 3505.03. The Libertarians failed to poll at least five percent of the voters in the 1982 election, however, thus losing their status as a recognized political party. Not until November of 1999 – a year after the events in question – did the Libertarian Party of Ohio again succeed in obtaining enough signatures to qualify as a political party on the general-election ballot.

On April 25, 1998, the Libertarian Party of Ohio held its annual convention in Akron. Among other items of business, it nominated Schrader as its candidate for the United States House of Representatives from the Seventh Congressional District. Schrader had been circulating petitions to obtain the requisite signatures to be placed on the general-election ballot prior to the convention. Because he was applying through the independent-petition procedure, Schrader needed to collect at least 1,876 valid signatures, a number equal to one percent of the voters who participated in the last gubernatorial election in the Seventh Congressional District. Schrader used official nominating-petition forms prepared by the state of Ohio for use by independent candidates. Directly above the "Statement of Candidacy" heading on each nominating petition, however, Schrader typed this additional statement: "James A. Schrader is the nominee of the Libertarian Party." On April 29, 1998, Schrader submitted petitions containing 3,168 signatures to the Clark County Board of Elections.

Because Schrader met the requirements of the independent-petition procedure, the Board of Elections placed him on the ballot as an independent candidate. On July 30, 1998, Schrader sent a letter to Bob Taft, then the Ohio Secretary of State, requesting that Schrader receive the voting cue of

and meaningfully associate by providing a 'voting cue' to Democratic and Republican candidates" but not to independent candidates. *Id.* at 176. Furthermore, the court held that "the statute violates the Equal Protection Clause of the Fourteenth Amendment because it places unequal burdens on Independent and third-party candidates and is designed to give Democrats and Republicans a decided advantage at the polls in a general election." *Id.* at 177-78. Expanding on *Rosen*'s analysis, the district court determined that the associational interests of Schrader and the Libertarian Party of Ohio to obtain a ballot cue were even stronger than those of independent candidates, because Schrader actually represents a specific ideology that he would like to have conveyed through a voting cue on the ballot.

The Supreme Court has acknowledged that "[t]o the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise." *Tashjian v. Republican Party*, 479 U.S. 208, 220 (1986). In declaring Ohio Revised Code § 3505.03 unconstitutional in *Rosen*, this court determined that "[o]nce a State admits a particular subject to the ballot and commences to manipulate the content or to legislate what shall and shall not appear, it must take into account the Federal and State Constitutions regarding freedom of speech and association, together with the provisions assuring equal protection of the laws." 970 F.2d at 175.

Nevertheless, the Supreme Court has recognized the distinction between the role of independent candidates and that of political parties:

[T]he political party and the independent candidate approaches to political activity are entirely different and neither is a satisfactory substitute for the other. A new party organization contemplates a statewide, ongoing organization with distinctive political character. Its goal is typically to gain control of the machinery of state

protected by the First and Fourteenth Amendments.  *See Anderson*, 460 U.S. at 789.  No one challenges the basic principle that the United States Constitution protects the rights of those involved in the political process.  As stated by the Supreme Court in *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214 (1989):

> It is well settled that partisan political organizations enjoy freedom of association protected by the First and Fourteenth Amendments . . . .  Freedom of association means not only that an individual voter has the right to associate with the political party of her choice, . . . but also that a political party has a right to identify the people who constitute the association, . . . and to select a standard bearer who best represents the party's ideologies and preferences.

*Id.* at 224 (citations and internal quotation marks omitted).  Similarly, the First Amendment rights of voters and political parties are protected from unequal regulatory burdens under the Equal Protection Clause of the Fourteenth Amendment. *See Williams v. Rhodes*, 393 U.S. 23, 30 (1968).

In the present case, the district court relied on this court's decision in *Rosen v. Brown*, 970 F.2d 169 (6th Cir. 1992), to determine that Ohio Revised Code § 3505.03 violated Schrader's and the Libertarian Party of Ohio's First and Fourteenth Amendment rights.  The court in *Rosen* heard testimony from two political scientists and a marketing and communications professional to the effect that party identification and the indication of a candidate's party affiliation on a ballot in the form of a voting cue play a crucial role in a voter's actions at the "climactic moment of choice" in an election.  *Rosen*, 970 F.2d at 172-75.  Because § 3505.03 provides cues only for candidates of qualified political parties, it did not allow for the designation of "Independent" as a voting cue for those who gained access to the ballot through the independent-petition procedure.

This law, *Rosen* concluded, "infringes upon the right of supporters of Independent candidates to meaningfully vote

"Libertarian" on the general-election ballot.  Schrader duly noted in his letter that the state had failed to amend the relevant portion of Ohio Revised Code § 3505.03, despite its having been declared unconstitutional by *Rosen*.  Secretary Taft did not respond to Schrader's request. Schrader, Wilson, and the Libertarian Party of Ohio then filed a complaint on August 19, 1998 in the district court, requesting injunctive and declaratory relief.

After Schrader filed an amended complaint, both parties moved for summary judgment.  On September 28, 1998, the district court entered a preliminary injunction directing the Secretary of State to place the designation "Libertarian" after Schrader's name on the ballot.  Schrader received 9,146 votes, or 5.09 percent of the votes cast in the race for the Seventh Congressional District, with the voting cue of "Libertarian" appearing on the general-election ballot in November of 1998.

Following the election, the district court allowed the parties to file supplemental briefs and renewed motions for summary judgment.  Determining that the issue was not moot, because it was "capable of repetition, yet evading review," *Rosen v. Brown*, 970 F.2d 169, 173 (6th Cir. 1992), the district court entered an order granting Schrader's motion for summary judgment and denying Ohio's motion.  The district court concluded that Ohio's denial of a partisan voting cue for Schrader, and for other candidates like Schrader who are members of unqualified political parties, is a violation of the First and Fourteenth Amendments.

In this appeal, the Ohio Secretary of State contends that the district court erred in holding that the reenacted version of Ohio Revised Code § 3505.03 is unconstitutional.  Ohio specifically argues that the Sixth Circuit precedent of *Rosen* does not extend to this case, because the state's interests in regulating political-party candidates is inherently greater than its interests in regulating independent candidates. Furthermore, Ohio maintains that its legitimate interest in regulating elections and controlling the recognition of

political parties outweighs any encroachment on the associational and equal protection rights of Schrader and the Libertarian Party of Ohio.

## II. ANALYSIS

### A.  Framework for election-law analysis

We review de novo the district court's grant of summary judgment. *See*, *e.g.*, *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000).  Summary judgment is proper when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  The judge is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A genuine issue for trial exists only when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

In determining the constitutionality of election laws, the balancing test set forth in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), must be applied.  *Anderson* directs courts to proceed as follows:

> [A court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate.  It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule.  In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.  Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

460 U.S. at 789.  The Supreme Court has subsequently recognized, however, that if a state's election law subjects the First and Fourteenth Amendment rights of participants in the political process to "'severe' restrictions, the regulation must be 'narrowly drawn to advance a state interest of compelling importance.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (holding that Hawaii's prohibition of write-in voting was not a severe restriction that infringed upon its citizens' rights under the First and Fourteenth Amendments) (citation omitted).  As the district court found and the following analysis will show, the burden placed on Schrader and the Libertarian Party of Ohio was not so severe as to trigger the strict-scrutiny review as outlined in *Burdick*.  We will therefore focus on the application of the *Anderson* balancing test to Schrader's challenge to Ohio Revised Code § 3505.03.

### B.  The district court failed to give sufficient weight to the state's interest in regulating elections when applying the *Anderson* balancing test

In applying the *Anderson* balancing test to Schrader's claim, the district court concluded that the interests put forward by Ohio were not so compelling as to override the First and Fourteenth Amendment rights of Schrader and other similarly situated candidates of unqualified political parties. The district court therefore declared Ohio Revised Code § 3505.03 unconstitutional.  Challenging this decision, Ohio contends that the district court mistakenly relied on this court's decision in *Rosen* in assessing the extent to which the Ohio election laws deprived Schrader and the Libertarian Party of Ohio of their First and Fourteenth Amendment rights. Furthermore, Ohio argues that the district court gave insufficient weight to the state's interest in regulating elections when evaluating the balance of interests under the *Anderson* test.  The following analysis of the competing burdens and interests under the *Anderson* balancing test will assess these claims.

The first step of the *Anderson* test requires us to examine the character and magnitude of the asserted injury to the rights