**Jerry RUBIN, Plaintiff–Appellant,**

v.

**CITY OF SANTA MONICA; Maria M. Stewart, City Clerk; Does 1–5, inclusive, Defendants–Appellees,**

**Bill Jones, Secretary of State, Defendant–Appellee.**

**No. 01–56091.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 6, 2002.

Filed Oct. 17, 2002.

---

James H. Fosbinder, Fosbinder & Fosbinder, Kahului, HI, for the plaintiff-appellant.

Rhonda M. Fosbinder, Fosbinder & Fosbinder, Kahului, HI, for the plaintiff-appellant.

Bill Lockyer, Attorney General, Sacramento, CA, for defendant-appellee Secretary of State.

Pamela Smith–Steward, Chief Assistant Attorney General, Sacramento, CA, for defendant-appellee Secretary of State.

Andrea Lynn Hoch, Acting Supervising Deputy Attorney General, Sacramento, CA, for defendant-appellee Secretary of State.

Kenneth R. Williams, Supervising Deputy Attorney General, Sacramento, CA, for defendant-appellee Secretary of State.

David M. Verhey, Deputy Attorney General, Sacramento, CA, for defendant-appellee Secretary of State.

Marsha Jones Moutrie, City Attorney, Santa Monica, CA, for defendant-appellee City of Santa Monica.

Lance S. Gams, Deputy City Attorney, Santa Monica, CA, for defendant-appellee City of Santa Monica.

Before HALL, SILVERMAN and RAWLINSON, Circuit Judges.

### OPINION

SILVERMAN, Circuit Judge.

## I. Overview

We are asked to decide whether the City of Santa Monica's refusal to permit a candidate for the City Council to designate his occupation as "peace activist" on the city election ballot violates the candidate's rights of free speech and equal protection. Because the ballot regulation prohibiting "status" designations is politically neutral and the City offers alternative channels of communication, we hold that the regulation does not severely burden a candidate's First Amendment rights. The City's interest in preserving the simplicity of its ballot is an important one, and the regulation is not unreasonable.

## II. Factual Background

Jerry Rubin was qualified to run as a candidate for the Santa Monica City Council in the 2000 election. On August 11, 2000, Rubin hand-delivered his nomination papers for candidacy to the Santa Monica City Clerk, Maria Stewart. His filing included his "Candidate's Statement" and his optional ballot designation of "peace activist."

A Candidate's Statement is a statement of 200 words or less published by the City of Santa Monica and dispersed to voters at the City's expense, in which a candidate may describe his or her background, education, and qualification for the position sought.

A "ballot designation" may take one of three forms under California Elections Code § 13107:

(1) Words designating the elective city, county, district, state, or federal office which the candidate holds at the time of filing the nomination documents to which he or she was elected by vote of the people, or to which he or she was appointed, in the case of a superior or municipal court judge.

(2) The word "incumbent" if the candidate is a candidate for the same office which he or she holds at the time of filing the nomination papers, and was elected to that office by a vote of the people, or, in the case of a superior or municipal court judge, was appointed to that office.

(3) No more than three words designating either the current principal professions, vocations, or occupations of the candidate, or the principal professions, vocations, or occupations of the candidate during the calendar year immediately preceding the filing of nomination documents.

Cal. Elec.Code § 13107(a)(1)-(3).

The statute further mandates that "[n]either the Secretary of State nor any other election official shall accept a designation [that] ... would mislead the voter." Cal. Elec.Code § 13107(b)(1).

To implement these standards, the Secretary of State promulgated specific Ballot

Designation Regulations. These regulations define "occupation" as

the employment in which one regularly engages or follows as the means of making a livelihood. Examples of an acceptable designation of an "occupation" as defined in Elections Code § 13107, subdivision (a)(3), include, but are not limited to, "rancher," "restaurateur," "retail salesperson," "manual laborer," "construction worker," "computer manufacturing executive," "military pilot," "secretary" and "police officer."

2 Cal.Code Reg. § 20713(a)(3).

The Regulations further categorize certain designations as "unacceptable:"

(a) The Secretary of State shall reject as unacceptable any proposed ballot designation which fails to comply with, or is otherwise inappropriate pursuant to, Elections Code § 13107, subdivision (a); is prohibited pursuant to Elections Code § 13107, subdivision (b); is misleading . . .

(b) The following types of activities are distinguished from professions, vocations, and occupations and are not acceptable as ballot designations pursuant to Elections Code § 13107, subdivision (a)(3):

. . .

(3) Statuses: A status is a state, condition, social position, or legal relation of the candidate to another person, persons, or the community as a whole. A status is generic in nature and generally fails to identify with any particular specificity the manner by which the candidate earns his or her livelihood or spends the substantial majority of his or her time. Examples of a status include, but are not limited to, philanthropist,

activist, patriot, taxpayer, concerned citizen, husband, wife, and the like.

2 Cal.Code Reg. § 20716.

Although the City of Santa Monica is not required to follow the State's regulations for its local elections, it chooses to do so. When City Clerk Maria Stewart accepted Rubin's nomination papers, she informed him that he could not designate himself a "peace activist" because the phrase constituted an impermissible "status" designation under California's election regulations. Stewart asked Rubin to supply her with an alternative ballot designation, but Rubin declined.

On September 7, 2000, Rubin filed a complaint in federal court against the City of Santa Monica, City Clerk Stewart, and Secretary of State Bill Jones, alleging both statutory and constitutional violations. He simultaneously filed a motion for a temporary restraining order (TRO) and a preliminary injunction to force the City of Santa Monica to accept his "peace activist" ballot designation. Rubin's application for a TRO and motion for a preliminary injunction were both denied.

Secretary of State Bill Jones moved to dismiss the case against him on the grounds that the complaint failed to state a claim, that the court lacked jurisdiction, and that Rubin lacked standing. On January 17, 2001, the district court issued a Minute Order granting Jones' Motion to Dismiss. The court soon thereafter issued a written order granting Jones' motion and *sua sponte* issued an "Order to Show Cause Why Entire Case Should Not Be Dismissed" as respects the city defendants. After additional briefing, the district court issued its final order dismissing the case, holding that (1) the term "peace activist" is not a profession, occupation, or vocation as defined by the relevant regulations, and (2) the ballot designation restrictions do not impose severe burdens on

Rubin's First Amendment rights, and that the restrictions are justified by the City's important regulatory interests. Although the Court noted that the City presented substantial evidence to the effect that Rubin did not earn his living as a "peace activist," it assumed for the purpose of its decision that he did.

## III. Standard of Review

■ We review de novo the constitutionality of a state statute. *Montana Chamber of Commerce v. Argenbright*, 226 F.3d 1049, 1054 (9th Cir.2000).

■ We also review de novo the dismissal of a party under Federal Rule of Civil Procedure 12(b)(6). *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir.2001). When reviewing a 12(b)(6) dismissal, the facts set forth in a plaintiff's complaint are to be interpreted liberally and taken as true for the purpose of determining whether or not a basis for the plaintiff's complaint exists. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984). A dismissal may be affirmed on any proper ground, even if the district court did not reach the issue or relied on different grounds or reasoning. *Oscar v. Univ. Students Co-op. Ass'n*, 965 F.2d 783, 785 (9th Cir.1992).

## IV. Jurisdiction and Mootness

We have jurisdiction over the district court's final order of dismissal pursuant to 28 U.S.C. § 1291.

■ The City of Santa Monica argues that, because the November 7, 2000 election "has long since come and gone," the issues Rubin raises on appeal are moot. Generally, a case is rendered moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Schaefer v. Town-*

*send*, 215 F.3d 1031, 1033 (9th Cir.2000) (citations omitted). However, a court is not precluded from exercising jurisdiction over an otherwise moot case where, as here, the case is "capable of repetition, yet evading review." *Id.*

■ Although the City of Santa Monica's 2000 election has passed, Rubin's claims are capable of repetition because future city election overseers would deny him the ability to use the designation "peace activist" on the ballot. "The short span of time between the filing deadline and the election makes such a challenge evasive of review." *Id.* (candidate's claim that residency requirements denied him the right to file a declaration of candidacy not rendered moot upon passing of election). As we have previously noted, "[i]f[election law] cases were rendered moot by the occurrence of an election, many constitutionally suspect laws ... could never reach appellate review." *Id.* (quoting *Joyner v. Mofford*, 706 F.2d 1523, 1527 (9th Cir.1983)) (alteration in the original). We accordingly exercise jurisdiction over Rubin's appeal.

## V. Analysis

### A. California Elections Code § 13107(a) and 2 California Code of Regulations § 20716 do not violate Rubin's freedom of speech.

#### 1. Election Regulation and the First Amendment

Rubin contends that, because California Elections Code § 13107 and 2 California Code of Regulations § 20716 prevent him from designating himself a "peace activist" on the election ballot, the laws violate his freedom of speech and are unconstitutional both facially and as applied to him.

Rubin and the City of Santa Monica analyze this case under the public forum principles announced in *Perry Educ. Ass'n*

*v. Perry Local Educators' Ass'n,* 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). Rubin argues that a ballot is a limited public forum requiring strict scrutiny, while the City says that a ballot is a non-public forum requiring only rational basis review. As we see it, the issue is not whether a ballot is some sort of public forum, but whether, applying Supreme Court election law, California's ballot regulations constitute "severe burdens" on free speech rights. *See Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358, 117 S.Ct. 1364, 137 L.Ed.2d 589 (1997).

■ In election regulation cases, the Supreme Court developed a balancing test to resolve the tension between a candidate's First Amendment rights and the state's interest in preserving the fairness and integrity of the voting process. When deciding whether a state election law violates First and Fourteenth Amendment speech rights, courts are to "weigh the character and magnitude of the burden the State's rule imposes on those rights against the interests the State contends justify that burden, and consider the extent to which the State's concerns make the burden necessary." *Id. (quoting Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)) (citations and internal quotations omitted). "Regulations imposing severe 11 burdens on plaintiffs' rights must be narrowly tailored and advance a compelling state interest. Lesser burdens, however, trigger less exacting review, and a State's 'important regulatory interests' will usually be enough to justify reasonable, nondiscriminatory restrictions." *Id.* (citations omitted). The cases reiterate that "[n]o bright line separates permissible election-related regulation from unconstitutional infringements on First Amendment freedoms," and that courts are required to make "hard judgments" given the interests involved. *Id.*

## 2. The election regulations do not impose a severe burden on Rubin's right of free speech.

There is little question but that Rubin's speech is burdened by the restriction placed on how he may designate his occupation on the ballot. It is the severity of that burden, however, that determines the standard of review by which we judge the state's interest and, accordingly, decide whether the restriction is unconstitutional. *See id.*

Courts will uphold as "not severe" restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process. *See Hussey v. City of Portland,* 64 F.3d 1260, 1265 (9th Cir. 1995). This is true even when the regulations "have the effect of channeling expressive activities at the polls." *Timmons,* 520 U.S. at 369, 117 S.Ct. 1364 (upholding city's "anti-fusion law" prohibiting candidates from appearing as the candidate of more than one party on the ballot) (citation omitted). *See also Burdick,* 504 U.S. at 438, 112 S.Ct. 2059 (upholding prohibition of write-in votes on election day where it was otherwise easy for candidates to appear on the ballots). Recognizing that "there must be a substantial regulation of elections if they are to be fair and honest," *Storer v. Brown,* 415 U.S. 724, 730, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Supreme Court recently noted the propriety of "requirements as to procedure and safeguards which experience shows are necessary to ensure the fundamental right involved." *Cook v. Gralike,* 531 U.S. 510, 524, 121 S.Ct. 1029, 149 L.Ed.2d 44 (2001) (citation omitted).

A restriction is particularly unlikely to be considered severe when a candidate is given other means of disseminating the desired information. In *Timmons,* for ex-

ample, the United States Supreme Court upheld a law prohibiting candidates from listing more than one party affiliation on the ballot, in part because the party retained great latitude in its ability to communicate its support for that candidate notwithstanding the minor ballot prohibition. *Timmons*, 520 U.S. at 363, 117 S.Ct. 1364. In *Burdick*, the Supreme Court upheld a Hawaii law prohibiting voters from writing in names of candidates on election day, citing as justification the ease of access candidates otherwise have to Hawaii's ballots. *Burdick*, 504 U.S. at 436–437, 112 S.Ct. 2059 (1992). Similarly, in *Schrader v. Blackwell*, the Sixth Circuit upheld the constitutionality of a regulation that prohibited unrecognized party designations, such as "Libertarian," because reasonable means existed for a party to become recognized. *Schrader*, 241 F.3d 783 (6th Cir. 2001).

Courts will strike down state election laws as severe speech restrictions only when they significantly impair access to the ballot, stifle core political speech, or dictate electoral outcomes. For example, *Cook*, 531 U.S. at 510, 121 S.Ct. 1029, overturned a law requiring ballots to contain notations describing whether or not the candidate supports term limits, holding that it punishes candidates on the basis of core political speech and dictates electoral outcomes. *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999), similarly overturned a requirement that petition circulators wear badges and publish identifying information, because the regulation hinders core political speech. In *Eu v. San Francisco County Democratic Central Committee*, 489 U.S. 214, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989), the United States Supreme Court struck a regulation prohibiting official governing bodies of political parties from giving endorsements to candidates, holding that the

law burdened core political speech. Likewise, in *Rosen v. Brown*, 970 F.2d 169 (6th Cir.1992), the Sixth Circuit invalidated a regulation prohibiting the political party designation of "Independent" while permitting "Republican" or "Democrat" designations, holding that party labels designate the views of party candidates and the regulations therefore hinder "core political speech."

■ Applying these principles to the case at hand, we hold that the City of Santa Monica's prohibition of status designations such as "activist" does not severely burden a candidate's First Amendment rights.

First, the regulation is viewpoint neutral. Any use of the term "activist" is banned from the ballot whether used alone or with any additional description. Peace activists and defense activists are treated the same. So are Right to Life Activists and Pro–Choice Activists. The City's viewpoint neutrality distinguishes the case before us from *Rosen*, in which the Sixth Circuit held that prohibiting the designation "Independent" was unconstitutional where the regulations allowed for other political party designations. *Rosen*, 970 F.2d at 176–77. As the *Schrader* court noted, "party labels provide a shorthand designation of the views of party candidates on matters of public concern." *Schrader*, 241 F.3d at 789. The regulation therefore affects core political speech.

Second, even though the regulation prevents Rubin from communicating his status as a peace activist on the ballot, it does not infringe on "core political speech," or favor one type of political speech over another. The regulation does not prevent Rubin from supporting or discussing political issues, it merely limits how he may describe his occupation on the ballot. In this way, the California law stands in stark

**1016**

contrast to the statute in *Cook*. In *Cook*, the Supreme Court struck down a Missouri law requiring "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" or "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" to be placed on the ballot next to the names of certain candidates. *Cook*, 531 U.S. at 514–15, 121 S.Ct. 1029.

▇ Third, the City of Santa Monica's regulations provide Rubin with an ample channel for communicating his peace activities to the public. California Elections Code § 13307 allows the candidate to submit a "Candidate's Statement," in which the candidate may describe his background, education, and qualifications in up to 200 words. The Statements are published by the City, at the City's expense, in a Voter Information Pamphlet and distributed *prior* to the election to all registered voters within Santa Monica. Rubin does not deny that he could have used those 200 words to describe his peace activism to the public at the city's expense. This device greatly decreases the burden imposed by the ballot restriction. *See, e.g., Timmons*, 520 U.S. at 362–63, 117 S.Ct. 1364 (upholding law prohibiting candidates from listing more than one party affiliation on the ballot, in part, because the party retains great latitude in its ability to communicate its support for that candidate notwithstanding the minor ballot prohibition).

Rubin argues that the Candidate's Statement does not cure the problem caused by the ballot restriction because the "ballot designation is the last thing they see as they punch their ballots." *See Anderson v. Martin*, 375 U.S. 399, 402, 84 S.Ct. 454, 11 L.Ed.2d 430 (1964). While there is no denying the importance of a ballot, the Supreme Court has recognized that "[b]allots serve primarily to elect candidates, not as forums for political expression." *Timmons*, 520 U.S. at 363, 117 S.Ct. 1364. A ballot is a ballot, not a bumper sticker. Cities and states have a legitimate interest in assuring that the purpose of a ballot is not "transform[ed] ... from a means of choosing candidates to a billboard for political advertising." *Id.* at 365, 117 S.Ct. 1364.

Finally, Rubin emphasizes that City officials are given great discretion in determining what is an "occupation." Far from being "unbridled," City of Santa Monica election officials are required to follow the comprehensive set of regulations contained in 2 California Code of Regulations § 20716 et seq., as to what constitutes acceptable ballot designations. Moreover, Rubin has not demonstrated that the officials use what discretion they do have in a manner that burdens his speech any more than do the regulations themselves, for example, by using their discretion to favor particular viewpoints or politics.

This is not a case where the right to vote or access to the ballot is at issue. This is not a case where the regulation permits certain types of political speech but prohibits others. The only issue is whether a "status" may be designated in the same manner as an "occupation." The California laws at issue here are much less intrusive than restrictions upheld by our sister circuits. *See, e.g., McLaughlin v. North Carolina Bd. of Elections*, 65 F.3d 1215 (4th Cir.1995) (upholding as constitutional North Carolina's requirement that a candidate of a new political party gather certain support in the general election for that party to remain on the ballot); *Dart v. Brown*, 717 F.2d 1491 (5th Cir.1983) (upholding as constitutional regulation which permitted the political party affiliation of recognized party candidates to be printed on the ballot, but required the space be left blank for candidates not affiliated with recognized political parties); *Schrader v. Blackwell*, 241 F.3d 783 (6th

Cir.2001) (same); *Rainbow Coalition v. Oklahoma State Election Bd.*, 844 F.2d 740 (10th Cir.1988) (finding constitutional Oklahoma's election scheme that authorizes candidates of recognized parties to be automatically identified on the ballot, but requires unrecognized parties to file petitions bearing 5% of total votes cast in last election before allowing party designation); *Libertarian Party v. Florida*, 710 F.2d 790 (11th Cir.1983) (upholding as constitutional an election law under which a minor political party may not run a candidate in a local election without satisfying 3% petition requirement).

Accordingly, we hold that the burden imposed by California Elections Code § 13107(a) and 2 California Code of Regulations § 20716 on Rubin's free speech right is not "severe." We therefore apply a "less exacting" standard of review to the regulations at issue. *Timmons*, 520 U.S. at 358, 117 S.Ct. 1364. That less exacting standard requires us now to turn to whether the interest the City seeks to advance by its ballot designation rules is "important" and whether the restriction is "reasonable" and "non-discriminatory." *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983).

3. **The City of Santa Monica has a sufficiently important regulatory interest in preventing misrepresentation and reducing voter confusion by regulating the ballot designations.**

"[S]tates have significant authority to regulate ... the identification of candidates on the ballot." *Schrader*, 241 F.3d at 790 (citations omitted). Historically, a state's interest in preventing confusion, deception, and frustration in the general election process has been regarded as an "important state interest." *See, e.g., Timmons*, 520 U.S. at 364, 117 S.Ct. 1364; *Eu*,

489 U.S. at 226, 109 S.Ct. 1013; *Jenness v. Fortson*, 403 U.S. 431, 442, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971).

■ Because "the State's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions," *Anderson*, 460 U.S. at 788, 103 S.Ct. 1564, a party challenging such a regulation bears a "heavy constitutional burden." *Schrader*, 241 F.3d at 790–91. A primary purpose of the California Election Code "is to insure the accurate designation of the candidate upon the ballot in order that an informed electorate may intelligently elect one of the candidates." *Salinger v. Jordan*, 61 Cal.2d 824, 826, 40 Cal.Rptr. 361, 395 P.2d 49 (1964). The specific provision at hand, California Elections Code § 13107(b)(1), prohibiting designations that "would mislead the voter," "seeks to prevent 'creative' misuse of ballot designations by candidates." *Andrews v. Valdez*, 40 Cal.App.4th 492, 494, 46 Cal.Rptr.2d 744 (1995) (citation omitted). To this end, the City of Santa Monica has limited the ballot designation to one of three topics: the office the candidate currently holds, a statement of incumbency if the candidate holds the same office, or a short, relatively generic, non-partisan, non-political three word statement of the candidate's profession, occupation, or vocation. These nondiscriminatory regulations are reasonably related to the legitimate goal of achieving a straightforward, neutral, non-confusing ballot.

Rubin argues that, even if the regulation is facially constitutional, it is unconstitutional as applied to him because his "occupation," as that term is defined in the regulation, is "peace activist," and he would therefore not deceive or mislead voters by using the phrase.

First, we reject Rubin's premise that a factual finding that he spends the majority of his workday and makes money in activi-

ties that can be described as those of an "activist" compels the conclusion that his "occupation" is that of a "peace activist" for election purposes. By definition, "activist" is a "status" rather than an "occupation." 2 Cal.Code Reg. § 20716(b). A "status" is defined as "a state, condition, social position or legal relation of the candidate to another person, persons, or the community as a whole." *Id.* The regulation prohibits "status" designations because "a status is generic in nature and generally fails to identify with any particular specificity the manner by which the candidate earns his or her livelihood or spends the substantial majority of his or her time." *Id.* The word "activist" is specifically listed as an example of an impermissible status designation. *Id.* Thus, even if a person were to spend the substantial majority of his or her time promoting peace, the designation "peace activist" would still be improper because it is "generic," and "generally fails to identify with any particular specificity the manner" in which the candidate spends his time. *Cf. Luke v. Superior Court*, 199 Cal.App.3d 1360, 245 Cal.Rptr. 594 (1988) (holding that a Commissioner who spent the majority of her time serving as a judge pro tempore could not list her occupation as "Judge—Los Angeles County (Acting)" because the designation would mislead voters).

Second, we believe that Rubin has misapprehended the import of California's judgment that the term "activist" is inappropriate as a designation of an occupation. As the discussion of the "generic" nature of a status designation indicates, the regulations do not reflect the judgment that a person can never spend the substantial majority of his time or earn a livelihood in activities that can be described as those of an activist. Rather, it is misleading in the sense that it provides too little information and permits the electorate to

engage in too varied a set of inferences, many of which will inevitably be inaccurate. In this connection, we note that the term "activist" does not designate a well-defined set of activities or how such activities relate specifically to making a livelihood. Instead, terms such as "peace activist" highlight a candidate's connection to a state, idea, or social position which is difficult to verify and could be manipulated by the candidate to foster a favorable image. Moreover, adding the word "peace" to the word "activist" does nothing to remedy these concerns although it makes the designation superficially somewhat more specific. Quite the opposite: while it does nothing to specify how Rubin's status as an "activist" relates to his time or earning a living, it connects his name to an idea which is popular but which can be used to describe a wide range of ideologies.

Finally, Santa Monica has an additional important regulatory interest in predictable and administrable election rules that must be weighed against the burden to Rubin. Even assuming that the term "activist" is not always misleading as a description of an occupation, determining when this might be the case would require nuanced judgments about the way that the term is generally understood by the public as well as the types of circumstances in which it may fairly be said that a candidate makes a living as an activist rather than doing some other possibly related activity such as selling items displaying political slogans. The regulations exist to provide guidance in determining what qualifies for an occupation and limit the discretion of election officials by providing relatively concrete standards. Rubin would have election officials use their discretion to essentially ignore this guidance where they could make a judgment that the term actually is not misleading considering the totality of the circumstances. Asking election

officials to make such open-ended and ultimately subjective determinations would inevitably introduce additional uncertainty and bias into the approval process as well as invite additional judicial intervention. *Cf. Luke,* 199 Cal.App.3d at 1363, 245 Cal. Rptr. 594.

The City of Santa Monica gave Rubin the option to provide voters with another, less generic term to describe his occupation on the ballot, but Rubin declined. We agree with the district court that Santa Monica may apply the California Election Code and accompanying regulations to prevent Rubin from using the designation "peace activist" on the ballot, even if Rubin spends the majority of his time in peace activism.

In summary, we hold that Santa Monica's regulations further an important governmental interest, that they are non-discriminatory, are viewpoint-neutral, and that they do not severely limit a candidate's First Amendment rights. Therefore, they are not unconstitutional on their face or as applied.

## B. The election regulations do not violate Rubin's right of Equal Protection.

Rubin argues that the election regulations violate his right to Equal Protection, because they are biased toward current office holders and those with prominent positions with respect to the right to free speech.

■ In election cases, free speech and equal protection analyses generally work in tandem. An election restriction is subject to heightened scrutiny on Equal Protection grounds only if it burdens a suspect class or a fundamental right. *See San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 17, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). Neither "non-incumbents" nor "peace activists" is a suspect

class. Therefore, rational basis review is appropriate unless the restriction unconstitutionally burdens a fundamental right, here, the right to free speech. Because we conclude that the restrictions do not unconstitutionally burden Rubin's right of free speech, we find that neither do they violate his Equal Protection right.

## C. The district court correctly dismissed Defendant Secretary of State Bill Jones.

Finally, Rubin claims that the district court erred in dismissing California Secretary of State Bill Jones from the lawsuit for lack of standing.

■ To have a justiciable claim, a litigant must meet three constitutional standing requirements: (1) he must have directly suffered an injury in fact, (2) the injury must be fairly traceable to the defendant's conduct, and (3) a favorable court decision must be likely to redress the injury. *See, e.g., Northeastern Florida Contractors v. Jacksonville,* 508 U.S. 656, 663, 113 S.Ct. 2297, 124 L.Ed.2d 586 (1993).

■ Rubin initially argues that he has standing to sue California's Secretary of State because the City would not have voluntarily chosen to exclude "peace activist" from the ballot had the State's election regulations not existed. The problem is that he cannot establish that Bill Jones caused the injury, or that enjoining the Secretary of State from enforcing the election regulations would stop the City of Santa Monica from following them in the future. The City of Santa Monica is not required to follow California's election regulations. To the contrary, under California Code of Regs. tit. 2, § 20710(e), the California State election regulation Rubin challenges is expressly inapplicable to municipal elections. Because Secretary of State Jones neither required nor encour-

aged the City of Santa Monica to follow the guidelines, Rubin cannot establish that his conduct *caused* the constitutional injury he claims.

Moreover, Rubin cannot establish redressability: even if the Court were to enjoin Jones from enforcing the state regulations in state elections, that injunction would have no effect on their use in local elections. Just as the City of Santa Monica voluntarily chose to adopt the State's regulations for its elections, so could it choose to follow the guidelines even if the State no longer adhered to them. A "purely speculative" favorable outcome will not suffice to establish the redressability prong. *See Linda R.S. v. Richard D.,* 410 U.S. 614, 618, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973) (finding no standing based on lack of redressability because the prospect that prosecuting deadbeat dads would result in payment of child support was only speculative).

Rubin next argues that he has standing to challenge the state election law because, as a voter and a citizen, his right to receive desired information about candidates is impaired by the regulation. This theory fails to establish an injury sufficient to establish standing. The Supreme Court has described the injury requirement for standing as an "injury in fact" that is "distinct and palpable," and not "hypothetical" or "abstract." *See Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984). To establish standing, however, the injury must be more than a generalized grievance common to all members of the public. *See Schlesinger v. Reservists Comm. to Stop the War,* 418 U.S. 208, 216–27, 94 S.Ct. 2925, 41 L.Ed.2d 706 (1974). Alleging simply that "as a voter and a citizen" he should be able to hear whatever three words a candidate wishes to say about himself or herself, Rubin has alleged no more than an abstract interest common

to all members of the public. Thus, Rubin cannot establish standing on that ground.

## VI. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED.**