# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARIA M. GONZALEZ; BERNIE
ABEYTIA; ARIZONA HISPANIC
COMMUNITY FORUM; CHICANOS POR
LA CAUSA; FRIENDLY HOUSE; JESUS
GONZALEZ; DEBBIE LOPEZ;
SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT; LUCIANO
VALENCIA; VALLE DEL SOL; THE
INTER TRIBAL COUNCIL OF ARIZONA,
INC.; ARIZONA ADVOCACY
NETWORK; STEVE M. GALLARDO;
LEAGUE OF UNITED LATIN AMERICAN
CITIZENS ARIZONA; LEAGUE OF
WOMEN VOTERS OF ARIZONA;
PEOPLE FOR THE AMERICAN WAY
FOUNDATION; HOPI TRIBE,
              *Plaintiffs-Appellees,*

                v.

STATE OF ARIZONA; JAN BREWER, in
her official capacity as Secretary
of State of Arizona; SHELLY
BAKER, La Paz County Recorder;
BERTA MANUZ, Greenlee County
Recorder; LYNN CONSTABLE,
Yavapai County Election Director;
KELLY DASTRUP, Navajo County
Election Director; LAURA DEAN-
LYTLE, Pinal County Recorder;

No. 06-16521

D.C. No.
CV-06-01268-ROS

4433

JUDY DICKERSON, Graham County Election Director; DONNA HALE, La Paz County Election Director; SUSAN HIGHTOWER MARLAR, Yuma County Recorder; GILBERTO HOYOS, Pinal County Election Director; LAURETTE JUSTMAN, Navajo County Recorder; LENORA JOHNSON, Apache County Recorder; PATTI MADRILL, Yuma County Election Director; JOAN McCALL, Mohave County Recorder; MELINDA MEEK, Santa Cruz County Election Director; SUZIE SAINZ, Santa Cruz County Recorder; THOMAS SCHELLING, Cochise County Election Director; ALLEN TEMPERT, Mohave County Election Director; ANN WAYMAN-TRUJILLO, Yavapai County Recorder; WENDY JOHN, Graham County Recorder; CANDACE OWENS, Coconino County Recorder; PATTY HANSEN, Coconino County Election Director; CHRISTINE RHODES, Cochise County Recorder; LINDA HAUGHT ORTEGA, Gila County Recorder; DIXIE MUNDY, Gila County Election Director; BRAD NELSON, Pima County Election Director; KAREN OSBORNE,

Maricopa County Election
Director; YVONNE PEARSON,
Greenlee County Election
Director; PENNY PEW, Apache
County Election Director; HELEN
PURCELL; F. ANN RODRIGUEZ, Pima
County Recorder,

*Defendants,*

and

YES ON PROPOSITION 200,
*Defendant-Intervenor-
Appellant.*

MARIA M. GONZALEZ; BERNIE
ABEYTIA; ARIZONA HISPANIC
COMMUNITY FORUM; CHICANOS POR
LA CAUSA; FRIENDLY HOUSE; JESUS
GONZALEZ; DEBBIE LOPEZ;
SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT; LUCIANO
VALENCIA; VALLE DEL SOL,
*Plaintiffs-Appellants,*

and

THE INTER TRIBAL COUNCIL OF
ARIZONA, INC.; ARIZONA ADVOCACY
NETWORK; STEVE M. GALLARDO;
LEAGUE OF UNITED LATIN AMERICAN
CITIZENS ARIZONA; LEAGUE OF
WOMEN VOTERS OF ARIZONA;

No. 06-16702

D.C. No.
CV-06-01268-ROS

PEOPLE FOR THE AMERICAN WAY
FOUNDATION; HOPI TRIBE,
                    *Plaintiffs,*

                v.

STATE OF ARIZONA; JAN BREWER, in
her official capacity as Secretary
of State of Arizona; SHELLY
BAKER, La Paz County Recorder;
BERTA MANUZ, Greenlee County
Recorder; LYNN CONSTABLE,
Yavapai County Election Director;
KELLY DASTRUP, Navajo County
Election Director; LAURA DEAN-
LYTLE, Pinal County Recorder;
JUDY DICKERSON, Graham County
Election Director; DONNA HALE,
La Paz County Election Director;
SUSAN HIGHTOWER MARLAR, Yuma
County Recorder; GILBERTO
HOYOS, Pinal County Election
Director; LAURETTE JUSTMAN,
Navajo County Recorder; LENORA
JOHNSON, Apache County
Recorder; PATTI MADRILL, Yuma
County Election Director; JOAN
MCCALL, Mohave County
Recorder; MELINDA MEEK, Santa
Cruz County Election Director;
SUZIE SAINZ, Santa Cruz County
Recorder; THOMAS SCHELLING,
Cochise County Election Director;

ALLEN TEMPERT, Mohave County Election Director; ANN WAYMAN-TRUJILLO, Yavapai County Recorder; WENDY JOHN, Graham County Recorder; CANDACE OWENS, Coconino County Recorder; PATTY HANSEN, Coconino County Election Director; CHRISTINE RHODES, Cochise County Recorder; LINDA HAUGHT ORTEGA, Gila County Recorder; DIXIE MUNDY, Gila County Election Director; BRAD NELSON, Pima County Election Director; KAREN OSBORNE, Maricopa County Election Director; YVONNE PEARSON, Greenlee County Election Director; PENNY PEW, Apache County Election Director; HELEN PURCELL, Maricopa County Recorder; F. ANN RODRIGUEZ, Pima County Recorder,
                    *Defendants-Appellees,*

                    and

YES ON PROPOSITION 200,
                    *Defendant-Intervenor.*

MARIA M. GONZALEZ; BERNIE
ABEYTIA; ARIZONA HISPANIC
COMMUNITY FORUM; CHICANOS
POR LA CAUSA; FRIENDLY HOUSE;
JESUS GONZALEZ; DEBBIE LOPEZ;
SOUTHWEST VOTER REGISTRATION
EDUCATION PROJECT; LUCIANO
VALENCIA; VALLE DEL SOL,
*Plaintiffs,*

and

THE INTER TRIBAL COUNCIL OF
ARIZONA, INC.; ARIZONA ADVOCACY
NETWORK; STEVE M. GALLARDO;
LEAGUE OF UNITED LATIN AMERICAN
CITIZENS ARIZONA; LEAGUE OF
WOMEN VOTERS OF ARIZONA;
PEOPLE FOR THE AMERICAN WAY
FOUNDATION; HOPI TRIBE,
*Plaintiffs-Appellants,*

v.

STATE OF ARIZONA; JAN BREWER, in
her official capacity as Secretary
of State of Arizona; SHELLY
BAKER, La Paz County Recorder;
BERTA MANUZ, Greenlee County
Recorder; LYNN CONSTABLE,
Yavapai County Election Director;
KELLY DASTRUP, Navajo County
Election Director; LAURA DEAN-
LYTLE, Pinal County Recorder;
JUDY DICKERSON, Graham County
Election Director; DONNA HALE,
La Paz County Election Director;

No. 06-16706

D.C. No.
CV-06-01268-ROS

OPINION

SUSAN HIGHTOWER MARLAR, Yuma
County Recorder; GILBERTO
HOYOS, Pinal County Election
Director; LAURETTE JUSTMAN,
Navajo County Recorder; LENORA
JOHNSON, Apache County
Recorder; PATTI MADRILL, Yuma
County Election Director; JOAN
McCALL, Mohave County
Recorder; MELINDA MEEK, Santa
Cruz County Election Director;
SUZIE SAINZ, Santa Cruz County
Recorder; THOMAS SCHELLING,
Cochise County Election Director;
ALLEN TEMPERT, Mohave County
Election Director; ANN WAYMAN-
TRUJILLO, Yavapai County
Recorder; WENDY JOHN, Graham
County Recorder; CANDACE
OWENS, Coconino County
Recorder; PATTY HANSEN,
Coconino County Election
Director; CHRISTINE RHODES,
Cochise County Recorder; LINDA
HAUGHT ORTEGA, Gila County
Recorder; DIXIE MUNDY, Gila
County Election Director; BRAD
NELSON, Pima County Election
Director; KAREN OSBORNE,
Maricopa County Election

Director; YVONNE PEARSON,
Greenlee County Election
Director; PENNY PEW, Apache
County Election Director; HELEN
PURCELL, Maricopa County
Recorder; F. ANN RODRIGUEZ, Pima
County Recorder,
              *Defendants-Appellees,*

                and

YES ON PROPOSITION 200,
              *Defendant-Intervenor.*

Appeal from the United States District Court
for the District of Arizona
Roslyn O. Silver, District Judge, Presiding

Argued and Submitted
January 8, 2007—San Francisco, California

Filed April 20, 2007

Before: Mary M. Schroeder, Chief Circuit Judge,
John T. Noonan, Circuit Judge, and George P. Schiavelli,*
District Judge.

Opinion by Chief Judge Schroeder

---

*The Honorable George P. Schiavelli, United States District Judge for
the Central District of California, sitting by designation.

**COUNSEL**

Joel M. Spector, Lakewood, Colorado, for defendant-intervener/appellant Yes on Proposition 200.

Nina Perales, San Antonio, Texas, for plaintiffs-appellees/appellants Gonzalez, et al.

Thomas L. Hudson, Phoenix, Arizona, for ITCA plaintiffs.

Mary O'Grady, Assistant Attorney General, Phoenix, Arizona, for defendants/appellees, State of Arizona, et al.

## OPINION

SCHROEDER, Chief Judge:

This litigation involves Proposition 200, enacted pursuant to Arizona voter initiative in 2004. The Proposition amended Arizona law to require persons wishing to register to vote for the first time in Arizona to present proof of citizenship, and to require all Arizona voters to present identification when they vote in person at the polls.

Plaintiffs are Arizona residents, Indian tribes and various community organizations. They filed this action in district court, challenging the validity of the Proposition on six asserted grounds: (1) that it is an unconstitutional poll tax, in violation of the Twenty-fourth Amendment to the United States Constitution; (2) that it violates the Equal Protection Clause of the Fourteenth Amendment because it imposes a disproportionate burden on naturalized citizens; (3) that it impedes the Fourteenth Amendment's guarantee of the fundamental right to vote; (4) that it violates Section 2 of the Voting Rights Act, 42 U.S.C. § 1973(a); (5) that it violates the Civil Rights Act, 42 U.S.C. §§ 1971(a)(2)(A) and (B); and (6) that it violates the National Voter Registration Act, 42 U.S.C. § 1973gg *et seq.* ("NVRA").

Plaintiffs filed their complaint in May 2006, seeking an injunction, pending trial, against the operation of both the registration and the voting provisions of the Proposition. On September 11, 2006, the district court denied a preliminary injunction. Shortly before the November 2006 general elec-

tion, plaintiffs filed their notice of appeal and also sought, from a motions panel of this Court, an emergency interlocutory injunction. Time was of the essence to plaintiffs because the 2006 general election was imminent. A regular two-judge motions panel of this court granted the requested relief and, in a brief order, enjoined enforcement of the Proposition's provisions.

On the application of the State and four counties, the Supreme Court vacated the emergency injunction because the motions panel gave no reasons for its action. *See Purcell v. Gonzalez*, 127 S.Ct. 5, 549 U.S. — (2006). The Supreme Court explained that, because the motions panel had not provided any reasoning, it could not determine whether the panel had given appropriate deference to the district court's denial of the requested relief. *Id.* at 5. In a separate opinion, Justice Stevens stressed that the case would benefit from the development of a full record regarding both the scope of voter disenfranchisement resulting from enforcement of the Proposition and the "prevalence and character" of the ostensible voter fraud that the Proposition was intended to counter. *Id.* at 5-6 (opinion of Stevens, J., concurring).

In the wake of the Supreme Court's opinion, plaintiffs chose not to continue to seek injunctive relief with respect to the in-person voting identification requirement. Before us now, on the same underlying record that was before the motions panel, is plaintiffs' appeal of the district court's denial of preliminary injunctive relief with respect only to the voter registration requirement. We conclude that the district court did not abuse its discretion in denying injunctive relief with respect to this requirement, because the limited record before us does not establish that the balance of hardships and likelihood of success on the merits of plaintiffs' claims justify an injunction at this stage of the proceedings. The litigation remains pending in the district court. There, final resolution of the scope of any appropriate permanent relief can be deter-

mined on the basis of a fully developed record, and well before the next general election in 2008.

## BACKGROUND

Voters approved Proposition 200 in the 2004 general election, and it was enacted on December 8, 2004. *See* A.R.S. § 16-166. In relevant part, Proposition 200 amended Arizona law to direct registering voters to "submit evidence of United States citizenship with the application and the registrar [to] reject the application if no evidence of citizenship is attached." A.R.S. § 16-152(A)(23). "Satisfactory evidence of citizenship" may be shown by including, with the voter registration form, any of the following: the number of an Arizona driver's license or non-operating identification license issued after October 1, 1996 (the date Arizona began requiring proof of lawful presence in the United States to obtain a license); a legible copy of a birth certificate; a legible copy of a United States passport; United States naturalization documents or the number of the certificate of naturalization; "other documents or methods of proof that [may be] established pursuant to" federal immigration law. A.R.S. § 16-166(F). The law applies to voters registered in Arizona before its effective date only if they seek to change registration from one county to another. A.R.S. § 16-166(G).

The 2006 election was the first general election to which Proposition 200 applied. Plaintiffs filed their challenges to it on May 9, 2006 and immediately moved for a preliminary injunction against both the proof of citizenship requirement and the in-person voter identification requirement. On September 11, 2006, the district court denied plaintiffs' motion but did not issue Findings of Fact and Conclusions of Law at that time.

Plaintiffs appealed the denial to this Court and the Clerk set a briefing schedule that concluded on November 21, 2006— two weeks after the 2006 general election. Plaintiffs therefore

requested an injunction pending appeal that, pursuant to this Court's rules then in effect, was heard by a two-judge motions panel. *See* 9th Cir. R. 3-3 (2006). On October 5, 2006, the motions panel issued an order granting plaintiffs' emergency request for an injunction pending appeal, retaining the briefing schedule, and stating: "The court enjoins implementation of Proposition 200's voting identification requirement in connection with Arizona's November 7, 2006 general election; and enjoins Proposition 200's registration proof of citizenship requirements so that voters can register before the October 9, 2006 registration deadline. This injunction shall remain in effect pending disposition of the merits of these appeals." Order in Nos. 06-16702, 06-16706 (filed Oct. 5, 2006), at 1-2.

Four days later, the motions panel denied defendants' request for reconsideration. The district court had not yet entered Findings of Fact and Conclusions of Law. The State and four counties then sought relief from the injunction in the United States Supreme Court. On October 12, 2006, while review by the Supreme Court was still pending, the district court issued the Findings of Fact and Conclusions of Law explaining its denial of the preliminary injunction. The Findings stated that, although plaintiffs had shown some likelihood of success on the merits of some of their claims, the court could not conclude "at this stage [that] they have shown a strong likelihood of success" on any of the claims. It further concluded that the balance of hardships tipped sharply in favor of defendants, the state and counties that were all fully prepared to enforce the Proposition's provisions.

On October 20, 2006, the Supreme Court issued its opinion in which it construed the State's filing as a petition for certiorari, granted the petition, and vacated the motions panel's injunction. *See Purcell*, 127 S.Ct. at 1. The opinion did not affect plaintiffs' underlying appeal of the district court's denial of preliminary injunctive relief, which remained pending in this Court. Following the Supreme Court's order vacat-

ing the emergency injunction pending appeal, the parties proceeded to brief the merits of the appeal. Plaintiffs-appellants at that point elected to limit their appeal to the registration identification requirement. The voter identification requirement therefore is not before us.

Because appellants moved for a preliminary injunction before any evidentiary proceedings could occur, the information in the record regarding Proposition 200's effect on voter registration is not extensive. It contains affidavits from four individuals who claim the new law burdens their right to vote. All four lack a driver's license, a birth certificate or any other document sufficient to register to vote. It also indicates that, between 1996 and the present, as many as 232 non-citizens tried to register to vote and that the State prosecuted ten of those 232 alleged non-citizens. The record is silent, however, as to how many non-citizens illegally registered to vote without detection, and also as to how many Arizona citizens lack all of the documents for registration the State will accept. According to data extrapolated from population estimates and voter registration rolls, voter registration in Arizona appears to have declined since January 2005, but this data provides no enlightenment as to the extent or cause of the registration decline.

In its Findings of Fact and Conclusions of Law, the district court found that, while plaintiffs had shown "a possibility of success" on the merits of some of their claims, they had not shown a strong likelihood of success on any of them. Indeed, the district court expressed its "reservations regarding the reliability" of some of the record evidence and noted that it had "no other reliable evidence" with which to compare it. Furthermore, in concluding that the balance of the hardships tipped sharply in favor of defendants, the district court found that plaintiffs' delay in filing their complaint undermined the contention that immediate relief was necessary. It also emphasized that the State had invested significant time and effort in

preparing to enforce the new requirements and that an order reinstituting the prior procedures likely would confuse voters.

## *ANALYSIS*

Appellants here make four arguments to support a grant of injunctive relief, all of which the district court rejected. We deal with each in turn.

## I.  Poll Tax

Appellants contend that Proposition 200's registration identification requirement amounts to an unconstitutional poll tax in violation of the Twenty-fourth Amendment because some Arizona citizens possess none of the documents sufficient for successful registration. As a result, appellants say, these citizens will be required to spend money to obtain documents necessary to register to vote and, therefore, are being taxed to vote.

**[1]** The Twenty-fourth Amendment proscribes any denial or abridgement of the right to vote for "failure to pay any poll tax or other tax." U.S. Const. amend. XXIV. The Amendment was passed in order to combat the "disenfranchisement of the poor[,]" which was the intention of the early poll taxes. *Harman v. Forssenius*, 380 U.S. 528, 539 (1965). Appellants assert that Proposition 200 effects exactly this result in Arizona and thus is unconstitutional.

Arizona's new law, however, is not like the system found unconstitutional in *Harman*. That case examined a Virginia provision that required voters to pay a poll tax, but allowed those who were unwilling or unable to pay the tax to file a certificate of residency. *Id.* at 530-31. The Supreme Court struck down the Virginia system specifically because it was premised on the requirement that some voters pay a poll tax. *Id.* The Court emphasized that the issue was not whether Virginia could require all voters to file a certificate of residency

each year, but that voters were required to file such certificate only if they refused to pay a poll tax. *Id.* at 542. Thus, their right to vote was "abridged . . . by reason of failure to pay the poll tax." *Id.*

**[2]** Here, voters do not have to choose between paying a poll tax and providing proof of citizenship when they register to vote. They have only to provide the proof of citizenship. Nor does Arizona's new law "make[ ] the affluence of the voter or payment of any fee an electoral standard." *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 666 (1966) (holding that a state may not condition voting in state elections on payment of a tax). Plaintiffs have demonstrated little likelihood of success of proving that Arizona's registration identification requirement is a poll tax.

## II.   Severe Burden on the Fundamental Right to Vote

**[3]** Appellants argue that Proposition 200 imposes an undue burden on the right to vote in Arizona and the State therefore was required to demonstrate to the district court that the law would survive strict scrutiny. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992). In *Burdick*, the Supreme Court determined that laws that burden the right to vote only incidentally need not be strictly scrutinized. *Id.* at 433. Only "severe" restrictions "must be narrowly drawn to advance a state interest of compelling importance." *Id.* at 434. State election laws that impose "reasonable, nondiscriminatory restrictions . . . [on] the rights of voters" need be supported only by "important regulatory interest[s]." *Id.*

**[4]** *Burdick* upheld a Hawaii prohibition on write-in candidates against a challenge that the ban severely burdened voters' right to vote for the candidate of their choice. Appellants have not demonstrated that Proposition 200's identification requirement imposes any more severe burden. In this Circuit, courts "uphold as 'not severe' restrictions that are generally applicable, even-handed, politically neutral, and which protect

the reliability and integrity of the election process." *Rubin v. City of Santa Monica*, 308 F.3d 1008, 1014 (9th Cir. 2002). Proposition 200 applies to all Arizonans. At this stage of the proceedings, appellants have not shown that it is anything other than an even-handed and politically neutral law.

**[5]** The evidence that Arizona citizens may be burdened by the new law consists of four declarations from individuals who are not parties to the litigation. These declarants object that obtaining the documentation sufficient to register would be "a burden." Because the vast majority of Arizona citizens in all likelihood already possess at least one of the documents sufficient for registration, whether the law severely burdens anyone, as the district court observed, is an "intense[ly] factual inquiry[,]" requiring development of a full record. *Gonzalez v. State of Arizona*, Nos. CV-06-1268, -1362, -1575, slip op. at 9 (Oct. 11, 2006). We therefore agree with the district court that, at this stage in the proceedings, appellants have not raised serious questions going to the merits of this argument.

### III.   Disproportionate Burden on Naturalized Citizens

Appellants argue that Proposition 200 imposes a disproportionate burden on naturalized citizens because it singles them out for more onerous documentation rules. Unlike native-born citizens, appellants contend, naturalized citizens who do not have a driver's or non-operating identification license, or a passport, must present naturalization information to the county recorder to register to vote. These citizens may not submit photocopies of their naturalization certificates, as native-born citizens may do with birth certificates, because naturalization certificates may not be photocopied without lawful authority. *Compare* A.R.S. § 16-166(F)(2) *with* A.R.S. § 16-166(F)(4). This limitation, appellants argue, amounts to a disproportionate burden on naturalized citizens in violation of the Equal Protection Clause.

**[6]** The record before us, however, contains no affidavits or declarations from naturalized citizens. Therefore, we do not

know the extent to which this requirement may burden or inconvenience any such citizen. Furthermore, the statute appears to permit naturalized citizens to use the number of the certificate of naturalization on their registration forms. A.R.S. §16-166(F)(4). Appellants present statistics suggesting that use of this number may result in the return of some registration forms for correction, which requires naturalized citizens to submit registration forms twice. There is no evidence in the record, however, to support this conclusion. Therefore, plaintiffs have not demonstrated a likelihood of success on this point.

## IV.    Violation of the NVRA

**[7]** Appellants next claim that Proposition 200 is preempted by the NVRA because, they say, the NVRA prohibits states from requiring that registrants submit proof of citizenship when registering to vote. The NVRA mandates that states either "accept and use the mail voter registration form prescribed by the Federal Election Commission[,]" 42 U.S.C. § 1973gg-4(a)(1), or, in the alternative, "develop and use [their own] form," as long as the latter conforms to the federal guidelines. *Id.* at § 1973gg-7(b).

**[8]** The NVRA also prohibits states from requiring that the form be notarized or otherwise formally authenticated. *Id.* Appellants interpret this as a proscription against states requiring documentary proof of citizenship. The language of the statute does not prohibit documentation requirements. Indeed, the statute permits states to "require [ ] such identifying information . . . as is necessary to enable . . . election official[s] to assess the eligibility of the applicant." *Id.* at § 1973gg-7(b)(1). The NVRA clearly conditions eligibility to vote on United States citizenship. *See* 42 U.S.C. §§ 1973gg, 1973gg-7(b)(2)(A). Read together, these two provisions plainly allow states, at least to some extent, to require their citizens to present evidence of citizenship when registering to

vote. Thus, again plaintiffs have not demonstrated a likelihood of succeeding on the merits of this claim.

## V.   The Balance of Hardships

**[9]** Appellants finally urge that the district court erred in finding that the balance of hardships tipped sharply in favor of appellees. In cases impacting elections, if a plaintiff seeking injunctive relief does not show a strong likelihood of success on the merits, the court examines whether the plaintiff will be irreparably harmed by denial of an injunction, whether or not the balance of hardships favors the plaintiff, and whether the public interest will be advanced by injunctive relief. *Southwest Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 917 (9th Cir. 2003) (internal quotation marks omitted). "[T]he less certain the district court is of the likelihood of success on the merits" of the claims, the greater the burden on the plaintiff to "convince [it] that the public interest and the balance of hardships tips in [plaintiffs'] favor." *Id.*

**[10]** The district court determined that the balance of hardships tipped sharply in favor of defendants-appellees because plaintiffs-appellants waited well over a year to file suit and the State was irretrievably committed to enforcing the new law. The district court said that by the time plaintiffs filed suit, on May 9, 2006, the State had "invested enormous resources in preparing to apply Proposition 200[,]" and reinstituting the prior procedures "would undoubtedly cause confusion among election officials, boardworkers, and voters." *Gonzalez v. State of Arizona*, Nos. CV 06-1268, -1362, -1575, slip op. at 16-17 (Oct. 12, 2006). In claiming that the balance of hardships and the public interest favor injunctive relief, appellants present the same evidence the district court found insufficient to raise serious questions on the merits of their claims. This evidence does not support the conclusion that the balance of hardships favors appellants.

**[11]** Because the record before us shows neither that appellants raise serious questions going to the merits of their argu-

ments nor that the balance of hardships tips in their favor, we agree with the district court that injunctive relief at this stage of the proceedings is not warranted.

## VI.    Intervention by "Yes on Proposition 200"

Under Federal Rule of Civil Procedure 24(a)(2), a party is entitled to intervene where "(1) the intervention is timely; (2) the applicant has a 'significant protectable interest relating to the property or transaction that is the subject of the action'; (3) 'the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest'; and (4) 'the existing parties may not adequately represent the applicant's interest.' " *Prete v. Bradbury*, 438 F.3d 949, 954 (9th Cir. 2006) (quoting *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004) (internal citations omitted)).

Here, the citizen group that put forth significant effort to ensure the passage of Proposition 200, Yes on Proposition 200 ("Intervenor"), is not a party to this action. It sought permission from the district court to intervene pursuant to Rule 24(b), and also argued that it met the requirements for intervention as of right under Rule 24(a)(2). The district court ruled that Intervenor did not meet all of Rule 24(a)(2)'s requirements and also refused to grant it permission to intervene. Intervenor appeals only the district court's ruling regarding Rule 24(a)(2).

**[12]** In its denial, the district court found that Intervenor satisfied the first three parts of the Rule 24(a)(2) test, but that it had failed to show that "the existing parties may not adequately represent the applicant's interest." Fed. R. Civ. P. 24(a)(2). Where "the government is acting on behalf of a constituency it represents," as it is here, this court assumes that the government will adequately represent that constituency. *Prete*, 438 F.3d at 956; *see also Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). In order to overcome this

presumption, the would-be intervenor must make a "very compelling showing" that the government will not adequately represent its interest. *Id.* at 1086.

Intervenor contends that the district court relied on the wrong precedent in requiring it to make a "very compelling showing." It urges that the court should have followed *Sagebrush Rebellion, Inc. v. Watt*, 713 F.3d 525 (9th Cir. 1983), rather than *Prete*. But *Sagebrush Rebellion* is not analogous to this case.

**[13]** *Sagebrush Rebellion* turns on the lack of any real adversarial relationship between the plaintiffs and the defendants. That is not the situation here. Nothing in the record before us suggests that defendants are unwilling or unable to defend Proposition 200. Indeed, they have done so at every level of the federal courts. The district court applied the correct precedent and did not err in denying Yes on Proposition 200's motion to intervene as of right.

The order of the district court denying preliminary injunctive relief and denying the motion to intervene is AFFIRMED.